IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

JUAN JOSÉ RENDÓN DELGADO

                Plaintiff,

v.

BLOOMBERG L.P.;
BLOOMBERG BUSINESSWEEK;
JORDAN ROBERTSON;
MICHAEL RILEY;
ANDREW WILLIS; AND
CARLOS MANUEL RODRÍGUEZ

                Defendants.

Case No.   1:17-cv-21192-KMW

DECLARATION

DECLARATION OF JEFFREY B. KORN

1.      I, Jeffrey B. Korn, declare pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

2.      I have been admitted to this Court *pro hac vice.* I am a partner at Willkie Farr & Gallagher LLP and counsel for Defendants Bloomberg L.P. ("Bloomberg")[1], Jordan Robertson, Michael Riley, Andrew Willis, and Carlos Manuel Rodríguez in the above-captioned matter. I submit this declaration in support of Defendants' Motion to Dismiss.

3.      Attached hereto as Exhibit 1 is a true and correct copy of an article by Tim Elfrink published in the *Miami New Times* on July 1, 2010, titled "J.J. Rendon is Latin America's Karl Rove," *available at* http://www.miaminewtimes.com/news/jj-rendon-is-latin-americas-karl-rove-6380975.

---

[1] Bloomberg Businessweek was improperly named as a defendant.

4.      Attached hereto as Exhibit 2 is a true and correct copy of the January 31, 2014, complaint filed in the Florida Circuit Court of the Eleventh Judicial Circuit, in *Juan Jose Rendon v. Carlos Mauricio Funes*, No. 2014-002756-CA-01.

5.      Attached hereto as Exhibit 3 is a true and correct copy of the May 27, 2014, order granting defendant's motion to dismiss in *Juan Jose Rendon v. Carlos Mauricio Funes*, No. 2014-002756-CA-01.

6.      Attached hereto as Exhibit 4 is a true and correct copy of the November 14, 2012, notice of voluntary dismissal without prejudice filed in the Florida Circuit Court for the Eleventh Judicial Circuit in *Juan Jose Rendon v. Felix de Bedout*, No. 2009-67449-CA-01.

7.      Attached hereto as Exhibit 5 is a true and correct copy of the July 1, 2011, order on motion to dismiss for lack of prosecution entered in the Florida Circuit Court for the Eleventh Judicial Circuit in *Juan Jose Rendon v. Miguel Angel Yunes Linares*, No. 10-23300-CA-01.

8.      Attached hereto as Exhibit 6 is a true and correct copy of the February 8, 2014, complaint filed in the Florida Circuit Court of the Eleventh Judicial Circuit in *Juan Jose Rendon v. Ricardo Perdomo*, No. 2014-003564-CA-01.

9.      Attached hereto as Exhibit 7 is a true and correct copy of the May 6, 2015, order on motion to dismiss for lack of prosecution in *Juan Jose Rendon v. Ricardo Perdomo*, No. 2014-003564-CA-01.

10.     Attached hereto as Exhibit 8 is a true and correct copy of an article by Rafael Romo published on CNN.com on May 19, 2014, titled "Alleged hacker video roils last days of Colombian presidential campaign," *available at* http://www.cnn.com/2014/05/19/world/americas/colombia-presidential-election-hacker-scandal/index.html.

2

11.     Attached hereto as Exhibit 9 is a true and correct copy of an article by Natalie Roterman published in the *Latin Times* on April 12, 2015, titled "Opposition Hacker Andrés Sepúlveda Sentenced To 10 Years In Prison For Spying On Colombia Peace Process," *available at* http://www.latintimes.com/opposition-hacker-andres-sepulveda-sentenced-10-years-prison-spying-colombia-peace-309023.

12.     Attached hereto as Exhibit 10 is a true and correct copy of an article by Jim Wyss published in the *Miami Times* on August 25, 2014, titled "Detained Colombia hacker outlines alleged political plot against peace process," *available at* http://www.miamiherald.com/news/nation-world/world/americas/article1981482.html.

13.     Attached hereto as Exhibit 11 is a true and correct copy of an article by Sibylla Brodzinsky published in *The Guardian* on May 12, 2014, titled "Scandals taint Colombian presidential race," *available at* https://www.theguardian.com/world/2014/may/12/scandals-colombian-presidential-race-santos.

14.     Attached hereto as Exhibit 12 is a true and correct copy of an article by Michelle Martin and Erik Kirschbaum published by *Reuters* on January 7, 2015, titled "Pro-Russian group claims cyber attack on German government websites," *available at* http://www.reuters.com/article/us-germany-cyberattack/pro-russian-group-claims-cyber-attack-on-german-government-websites-idUSKBN0KG15320150107.

15.     Attached hereto as Exhibit 13 is a true and correct copy of an article by Malia Zimmerman published by *Fox News* on June 14, 2015, titled "Hack the vote: Cyber experts say ballot machines easy targets," *available at* http://www.foxnews.com/politics/2015/06/11/hack-vote-cyber-experts-say-ballot-machines-easy-targets.html.

16.     Attached hereto as Exhibit 14 is a true and correct copy of an article by Pam
Fessler published by *NPR* on April 16, 2015, titled "Vulnerable Voting Machine Raises
Questions About Election Security," *available at*

http://www.npr.org/sections/itsallpolitics/2015/04/16/399986331/hacked-touchscreen-voting-
machine-raises-questions-about-election-security.

17.     Attached hereto as Exhibit 15 is a true and correct copy of an article by the
Associated Press published in *The Guardian* on May 6, 2014, titled "Juan Manuel Santos
campaign chief resigns amid bribery allegations," *available at*

https://www.theguardian.com/world/2014/may/06/juan-manuel-santos-campaign-chief-resigns-
amid-bribery-allegations.

18.     Attached hereto as Exhibit 16 is a true and correct copy of an article by William
Neuman published in the *New York Times* on May 15, 2014, titled "In Colombia, an Election
May Turn on a Dirty War," *available at*

https://www.nytimes.com/2014/05/16/world/americas/in-colombia-an-election-may-turn-on-a-
dirty-war.html.

Dated: September 11, 2017

Jeffrey B. Korn

4

# EXHIBIT 1







J.J. Rendón

# J.J. Rendon is Latin America's Karl Rove

**TIM ELFRINK** | **JULY 1, 2010** | **4:00AM**

A little before noon on a spring day, J.J. Rendón wakes up and dresses as usual in a Jedi-like black frock. He takes a drag on a cigarette and rubs sleep from his dark eyes. Golden statues line his shelves, and water burbles over a Buddhist shrine that's a centerpiece of his bayside condo in Brickell's Jade Residences, a 48-story tower with private elevators activated by thumbprint readers.

"My entire career, I've fought for democracy, equality, and civil rights," he says in a quiet, sandpaper voice. "That's made me unpopular in some circles."

Rendón is virtually unknown in Miami, where he lives in exile from his native Caracas, but he's become one of Latin America's most important political figures, a Karl Rove-esque gun-for-hire for right-leaning candidates from Mexico to Honduras, Venezuela, the Dominican Republic, and Aruba.

His biggest triumph yet came last month in Colombia's presidential race, when he transformed a tightly knotted two-man race into a landslide victory for Juan Manuel Santos.

Rendón says he pulled off the win with shrewd management and a mastery of psychology. But Colombian journalists complain that his knack for gossip-mongering and engineering underground attacks — a skill that earned him the nickname "J.J. Rumor" — tainted the election.

"Rendón is seen as this malevolent figure in Colombia," says María Teresa Ronderos, an editor at Colombia's *Semana* magazine. "Santos had a weak campaign until he hired Rendón. Some think he helped not just by reorganizing, but also with rumors and with dirty tricks."

Rendón, of course, says he plays clean. Recently, he even took the fight over his reputation to Miami courts, filing defamation suits against Radio Caracol (1260 AM) and a prominent Mexican gubernatorial candidate. He says the station smeared him by reporting he'd blackmailed a Colombian official, and the candidate falsely accused him of working for the CIA. "If you can prove I did anything illegal, go to the judge," he says, chuckling softly. "It's just talking. There's no substance there at all."

Rendón was born in 1964 in Caracas. His mother and father were local organizers for Acción Democrática, a political party that helped end dictator Marcos Pérez Jiménez's reign in 1958. Throughout his childhood, local party candidates held rallies and meetings in the family home.

Young J.J. – short for Juan José – studied psychology at universities in Caracas and Italy before landing an advertising job in his early 20s. His first political work came by accident, when candidates meeting at his house asked for his help crafting slogans. Rendón showed a preternatural gift for the work.

When he was age 24, Rendón volunteered for Carlos Andrés Pérez's presidential run. He began as a driver but eventually found a spot assisting American consultant Joseph Napolitan, who had helped JFK win office. The American offered the neophyte a list of 30 tips on how to win elections – advice Rendón still heeds today.

His big break came five years later, when he was hired to help run the sputtering presidential campaign of Rafael Caldera. Caldera won a narrow victory, and Rendón earned credit as the mind behind the win.

From these early influences, he crafted an edgy political style. "If it's within the law, then I don't have any misgivings," he recently told *Semana*.

Part of his success has also been a carefully cultivated image. He not only talks often about Eastern mysticism, but also wears a flowing dark wardrobe. He stares intensely, his pale skin and prominent forehead suggesting a sly Bond villain.

After Rendón's name became known in Venezuela, politicians in Aruba and the Dominican Republic called on him. In 2000, after Vicente Fox ended the

Institutional Revolutionary Party's seven-decade stranglehold on Mexico's presidency, the party hired him.

It was then when he went from backstage to center stage. The press began vigorously attacking his style, calling him, for instance, a "neo-Nazi Venezuelan." One report claimed he had started rumors in a Michoacan election that a candidate was gay and had a "network of Cuban horsemen" at the ready to pleasure him.

In 2004, Rendón picked a very public fight with Venezuelan President Hugo Chávez, claiming on national TV that voting machines had been rigged in a recall vote. He hasn't been back to his homeland since. Though Chávez never directly threatened him, he says, "Friends told me I would never even get out of the airport if I returned."

He got a measure of revenge last year when Honduran congressman Porfirio "Pepe" Lobo hired him after the former president — Chávez acolyte Manuel Zelaya — was forced out by the military. Rendón guided Lobo to the presidential palace, a victory he casts as a blow to Chávez.

It didn't take long for Rendón's reputation to become an issue in Colombia's presidential race. He was already well known there after working for outgoing president Alvaro Uribe's Party of the U. In 2007, several newspapers claimed Rendón had tried to blackmail a party official with threats of exposing the man's use of prostitutes.

Rendón vigorously denies those reports. In fact, in September 2009, he sued Miami-based Radio Caracol, two of its hosts — Julio Sánchez Cristo and Felix de Bedout — and several Colombian columnists. "[They] used their control of the media to destroy Mr. Rendón's reputation [and] cause him to be the subject of ridicule, hatred, contempt and disgrace," his complaint says.

"Our lawyers in Miami are handling the suit," Cristo says in an email. "I have little other information about it."

Rendón's track record is likely what attracted Santos's presidential campaign to hire him this past May 9. It was just 21 days before a first showdown with an

eccentric Green Party candidate named Antanas Mockus, who had pulled even in the polls.

*El Espectador* newspaper announced the "rumorology" expert had returned, and another source called Rendón the "creator of the dirty game." Hundreds of people signed on to Facebook campaigns to have him deported.

He says the negative press was all part of his unusual strategy. He speaks about it in a typically inscrutable way. "They created the idea that some Machiavelli is coming to steal the election. It seemed they were harming me, but in the end there's a boomerang effect."

The papers also linked an upsurge in negative rumors about Mockus to Rendón's arrival. On the Internet, reams of anonymous comments appeared suggesting Mockus was gay, that he wasn't born in Colombia, that he was an atheist, and that he had secret plans to extradite Uribe to Venezuela. Rendón denies involvement.

*Semana* journalist Ronderos adds, "Wherever these rumors came from, it did affect the campaign. Mockus is a sensitive guy, and it affected him emotionally for sure. He was really, really off when he tried to defend himself. It ruined him in a way."

Indeed, just ten days after Rendón's arrival, Santos surged in polling, and in the May 30 first-round ballot, Santos annihilated Mockus by 46 percent to 21 percent. Then, in the June 20 runoff, Rendón's candidate garnered 69 percent to take the presidency. "I became this very negative character for 30 percent of the population," he says. "But to the other 70 percent, now I'm a national hero."

The race cemented Rendón's controversial place in Colombian politics, says Michael Shifter, president of the Inter-American Dialogue. "He was seen as this master of dirty politics, and everyone was talking about him," he says.

As they play out in the next few months, the cases in Miami-Dade Circuit Court might enhance that reputation. If a judge hears the cases, defense attorneys will likely call critics from around Latin America to testify.

A third court case gives a sense of Rendón's financial success. He declines to discuss his fees, but this past January, he sued more than a dozen developers,

claiming they had bilked him out of $3.5 million in fraudulent real estate deals. A judge tossed out his claim May 24.

Has all of this success made him happy? "You know, that's a very American word. I don't like it," he says. "It's mission accomplished, and that's all. I'm at peace."

RELATED TOPICS:     NEWS          LONGFORM

MIAMI, LYFT IS YOUR RIDE TO IRON FORK EVENT

Get $5 off your first 4 rides
with new user code
MIAMINEWTIMES
Terms Apply.

lyft

©2017 Miami New Times, LLC. All rights reserved.

# EXHIBIT 2

Filing # 9785524 Electronically Filed 01/31/2014 03:37:23 PM

IN THE CIRCUIT COURT OF THE 11ᵀᴴ
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

JUAN JOSE RENDON,

GENERAL JURISDICTION DIVISION

     Plaintiff,

CASE NO.:

v.

CARLOS MAURICIO FUNES,

     Defendant.
_____/

## COMPLAINT

Plaintiff, JUAN JOSE RENDON ("RENDON") sues Defendant, CARLOS MAURICIO
FUNES ("FUNES"), and alleges the following:

### Nature of this Action

1.    This is an action brought by Plaintiff against the Defendant for defamation
based on false statements of fact made during several press conferences and interviews
given by Defendant on January 30, 2014, in which he stated, among other falsehoods, that
Plaintiff was a rapist. Defendant made these false, highly defamatory and prejudicial
statements with the intent to cause irreparable and permanent damage to the good name
and reputation of Plaintiff.

2.    Defendant began a campaign to destroy Plaintiff's personal and professional
reputation by fabricating and disseminating these false accusations of criminal activity by
Plaintiff. Defendant's defamatory statements made in the form of press conferences and
interviews have been disseminated to diverse media outlets, including but not limited to,
newspapers, radio, television, and the internet all of which are seen in Central America,
South America, Caribbean, Europe, the United States and, particularly in South Florida.

3.    Defendant successfully used his control and influence of the media to destroy

1
CHOI & MENEZES, LLP
1925 Brickell Avenue, Suite D205, Miami, Florida 33129 * Telephone: 305.854.6333 * Facsimile: 305.675.0967

https://www2.miami-dadeclerk.com/ocs/ViewerHTML5.aspx?QS=B6%2f9EwnZlIiih%2b...   4/13/2017

Plaintiff's reputation, cause him to be the subject of ridicule, hatred, contempt, and disgrace and to falsely accuse him of having committed a crime.

## JURISDICTION AND VENUE

4.     This is an action for damages in excess of $100,000,000.00, exclusive of interests, costs and attorney's fees and is otherwise within the jurisdiction of this Court.

5.     Plaintiff resides in Miami, Florida; Bogota, Colombia; and Mexico D.F., Mexico and derives business in different markets including Miami-Dade County, Florida.

6.     Defendant is a resident of San Salvador, El Salvador and, based upon information and belief, he owns several properties, and bank accounts in the State of Florida, directly and indirectly using different nominees.

7.     The Court has jurisdiction over the Defendant pursuant to Section 48.193(1)(b) of the Florida Statutes, because Defendant has committed his tortious acts, in Florida.

8.     Venue is proper in this County as Defendant committed the tort of defamation in this County, by disseminating false statements and causing injury to Plaintiff throughout the United States, Europe, Central America, South America, and the Caribbean, including Miami-Dade County, and, therefore, Defendant is subject to personal jurisdiction by this Court.

9.     All the necessary conditions precedent to the bringing of this action have been satisfied or waived by the Defendant.

## FACTUAL BACKGROUND

10.    At all times material hereto, Plaintiff is a political and media consultant to individuals and political groups throughout Latin America, the Caribbean, South America and South Florida.  He assists in formulating political strategy, managing publicity, and analyzing public data such as polls and other statistical studies.

11.    Plaintiff had established a successful career as an international political advisor, strategist, consultant and publicist by providing assistance in formulating

presidential, gubernatorial and mayoral, and other political campaigns in the Western Hemisphere.

12.    Defendant is the current President of El Salvador.

13.    As part of a smear campaign against the presidential candidates of the primary opposing political party, and individually and as the main spokesperson for the former terrorist organization, National Liberation Front Farabundo Marti ("FMLN"), Defendant gave a press conference on January 30, 2014;

14.    In the press conference of January 30, 2014, Defendant, with malice and in total disregard to the truth, made several false statements, which include, but are not limited to the following:

a.    Plaintiff is an accused rapist;

b.    Plaintiff is a fugitive from justice, who has a red alert from Interpol, for having committed an act of sexual violence against the citizen Maria Eugenia Mora;

c.    Plaintiff is a rapist;

b.    Plaintiff is an international fugitive that orchestrates dirty war campaigns in all of Latin America;

All of these statements are false and defamatory in nature.

15.    These statements were made with actual malice or reckless disregard for the truth, with the sole purpose of drawing negative media attention and discredit the presidential candidate for the National Republican Aliance Party ("ARENA") with total disregard to the damage that would cause Plaintiff.

16.    Defendant's malicious and reckless falsehoods have caused Plaintiff permanent and irreparable harm to his reputation in South Florida and all over Latin America, affecting his present and future contracts for his services as political advisor and marketing strategist, and causing substantial economic harm in excess of $100,000,000.00. Additionally, as a direct and proximate cause of Defendant's defamatory statements disseminated to the international media, Plaintiff has suffered shame, humiliation, mental

anguish and distress.

## COUNT I - DEFAMATION

17.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 16 as if fully set forth herein.

18.    By the statements detailed above in paragraphs 1 through 16, Defendant has knowingly and intentionally committed multiple acts of defamation against Plaintiff.

19.    Defendant's defamatory statements are false statements of fact, published to third parties, and made with Defendant's knowledge that their falsity or with reckless disregard for the truth.

20.    Defendant acted with malice, without justification or privilege, and with specific intent to injure Plaintiff by falsely portraying him as having committed criminal acts, thereby permanently tainting the public's perception of Plaintiff and his activities as an individual and as a political consultant.

21.    As a direct and proximate result of Defendant's willful and malicious conduct, Plaintiff has been greatly injured in his reputation.  He has been subjected to ridicule, hatred, contempt, and has sustained economic loss, loss of employment, and loss of potential employment.

22.    Plaintiff reserves the right to add additional Counts of defamation upon completion of discovery.

WHEREFORE, Plaintiff, JUAN JOSE RENDON, demands judgment for compensatory damages in excess of $100,000,000.00, punitive damages and costs against Defendant CARLOS MAURICIO FUNES, and granting him any other relief this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, JUAN JOSE RENDON, demands a trial by jury as to all issues so triable.

**Dated: January 31, 2014.**

Respectfully submitted,

CHOI & MENEZES, LLP
1925 Brickell Avenue, Suite D-205
Miami, Florida 33129
Telephone: (305) 854 6333
Facsimile: (305) 675 0967

By: _____

IL YOUNG CHOI, ESQ.
Florida Bar No. 10375

# EXHIBIT 3

ODS

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

SECTION: 10
CASE NO: 14-2756 (01)

JUAN JOSE Rendon
                    Plaintiff(s),

        vs.

                                      ORDER
                              GRANTING/DENYING
                              PLAINTIFF'S/DEFENDANT'S
                              Motion To Dismiss

Carlos Mauricio Funes
                    Defendant(s).

_____/

        THIS CAUSE having come on to be heard on    5 - 27 -14
on Plaintiff's/Defendant's Motion

                        To Dismiss

and the Court having heard argument of counsel, and being otherwise advised in the premises, it is
hereupon

            ORDERED AND ADJUDGED that said Motion be, and the same is hereby

Granted based on Head of State immunity.
The Plaintiff(s) complaint is dismissed w/out
prejudice. Defendant reserves All rights +
defenses should Plaintiff re-file in any
forum.

        DONE AND ORDERED in Chambers at Miami-Dade County, Florida this  27  day of
_____ May _____, 2014.

                                                              ORIGINAL
                                      CIRCUIT COURT JUDGE   JUDGE PETER R. LOPEZ
                                      JUDGE PETER R. LOPEZ

Copies furnished to:  Counsel of Record

Bk 29172 Pg 2431 CFN 20140389621 05/30/2014 15:55:08 Pg 1 of 1 Mia-Dade Cty, FL

# EXHIBIT 4

IN THE CIRCUIT COURT OF THE 11th JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

JUAN JOSE RENDON,

        Plaintiff,

v.

LA W RADIO, a foreign corporation,
CARACOL RADIO, a Florida corporation,
GRUPO PRISA, a foreign corporation,
JULIO SANCHEZ CRISTO, individually,
FELIX DE BEDOUT, individually,
NICOLAS URIBE, individually,
EL ESPECTADOR, a foreign corporation, and
RAMIRO BEJARANO GUZMAN,
individually,

        Defendants.

_____/

GENERAL JURISDICTION DIVISION

CASE NO.: 09-67449- CA- 01

Section No. 15

## NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE

    Plaintiff, JUAN JOSE RENDON, hereby enters his voluntary dismissal of the above styled action without prejudice as to all Defendants.

                Respectfully submitted,

                CHOI & MENEZES, LLP
                1925 Brickell Avenue, Suite D205
                Miami, Florida 33129
                Telephone: (305)854-6333
                Facsimile: (305)675-0967
                Primary Email: choilawyer@aol.com
                Secondary Email: legalassistance@choilawfirm.com
                Secondary Email: choilaw@aol.com

By: _____
      IL YOUNG CHOI, ESQ.
      Florida Bar No. 10375

1

Bk 28358 Pg 2237 CFN 20120820233 11/14/2012 14:51:46 Pg 1 of 2 Mia-Dade Cty, FL

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion was

forwarded via Regular U.S. Mail this _____7ᵗʰ_____ day of November 2012 to:

Radio Caracol                  Caracol Broadcasing, Inc.
Caracol S.A.                    2100 Coral Way
Calle 67 #7-37                  Suite 200
Bogota, Colombia                Miami, Florida 33172

Grupo Prisa
c/o Caracol Broadcasting, Inc.
2100 Coral Way
Suite 200
Miami, Florida 33172

W Radio
Calle 67 #7-37
Bogota, Colombia

Julio Sanchez Cristo
W Radio
Calle 67 #7-37
Bogota, Colombia

Felix de Bedout
W Radio
Calle 67 #7-37
Bogota, Colombia

El Espectador
Ave. El Dorado No. 69-76
 Porteria Principal
 Bogota, Colombia

Ramiro Bejarano Guzman
c/o El Espectador
Ave. El Dorado No. 69-76
 Porteria Principal
 Bogota, Colombia

By: _____
        IL YOUNG CHOI, ESQ.

2

CHOI & MENEZES, LLP
1925 Brickell Avenue, Suite D-205, Miami, Florida 33129 *Telephone: (305)854-6333 * Facsimile: (305) 675-0967

Bk 28358 Pg 2238 CFN 20120820233 11/14/2012 14:51:46 Pg 2 of 2 Mia-Dade Cty, FL

# EXHIBIT 5

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE, COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO. 10- 23300-CA-01

RENDON, JUAN JOSE                    Section No. 06

                                     CIVIL DIVISION
            Plaintiff(s)
vs.
   LINARES, MIGUEL ANGE              Motion, Notice and

                                     Judgment of Dismissal
            Defendant(s)

**FINAL ORDER AS TO ALL PARTIES**
SRS DISPOSITION

ORDER ON MOTION TO DISMISS
FOR LACK OF PROSECUTION

    THIS CAUSE having come on to be heard pursuant to Rule
1.420 of the Fla.R.Civ.P. and the Court being fully advised in
the premises.

[X] THE COURT FINDS that no party opposing the motion to dismiss
for lack of prosecution having appeared as ordered and
demonstrated the existence of the requisite record activity or
that action had been stayed nor having timely filed a showing
of good cause in writing, if required, and therefore, in the
absence of any evidence to the contrary, the Court finds that
(1) notice prescribed by Rule 1.420(e) was timely served; (2)
there was no record activity during the 10 months immediately
preceding service of the foregoing notice; (3) there was no
record activity during 60 days immediately following service of
the foregoing notice; (4) no stay has been issued or approved by
the Court; and (5) no party has shown good cause why this action
should remain pending;

THEREFORE, IT IS ORDERED that this action is dismissed for lack of prosecution.

|‾| THE COURT FINDS good cause why this action should remain pending;
|_| therefore, IT ORDERED AND ADJUDGED that the Motion to Dismiss for Lack of
Prosecution pursuant to Florida Rule of Civil Procedure 1.420(E), is hereby
DENIED.

DONE and ORDERED in Chambers at Miami-Dade County, Florida this _/_ day of

_July_ _2011_.

**DAVID C. MILLER**
**Circuit Court Judge**

                               Circuit Court Judge

cc:    Counsel/Parties of Record

**If you are a person with a disability who needs any accommodation in
order to participate in this proceeding, you are entitled, at no cost to
you, to the provision of certain assistance. Please contact the Eleventh
Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse
Center, 175 NW 1st Ave., Suite 2702, Miami, FL. 33128, Telephone
(305) 349-7175; TDD (305) 349-7174; Fax (305) 349-7355; at least 7 days
before your scheduled court appearance, or immediately upon receiving
this notification, if the time before the scheduled appearance is less than
7 days; if you are hearing or voice impaired, call 711.**

307

https://www2.miami-dadeclerk.com/Public-Records/PrintDocument.aspx?QS=YaoUfOzxry0oJAn849ppkqH%2bBi47bCFYUs5OBId%2fpxxXbmXNDzrg6nnGizf9h...  1/1

# EXHIBIT 6

Filing # 10060510 Electronically Filed 02/07/2014 05:52:56 PM

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

JUAN JOSE RENDON,

                                    GENERAL JURISDICTION DIVISION

      Plaintiff,

                                      CASE NO.:

V.

RICARDO PERDOMO,

      Defendant.

_____/

## COMPLAINT

      Plaintiff, JUAN JOSE RENDON ("RENDON") sues Defendant, RICARDO
PERDOMO ("PERDOMO"), and alleges the following:

### Nature of this Action

1.     This is an action brought by Plaintiff against the Defendant for defamation based on
false statements of fact made during a press conference and interviews given by
Defendant on February 1, 2014.

2.     Defendant's false statements were made intentionally to be immediately
disseminated and published globally, including Miami, Florida where Plaintiff resides.

3.     Defendant, among other falsehoods, stated that Plaintiff was a rapist, and that this
incident "occurred in the Republic of Panama in a hotel where a violent and
aggressive rape against a Venezuelan citizen was committed" Defendant's
intentionally made these and other highly inflammatory statements with the specific
intent to cause irreparable and permanent damage to the good name and reputation
of Plaintiff.

4.     In spite of having access to clear documentary evidence and verifiable information to

the contrary, Defendant has intentionally continued to assert these unsubstantiated falsehoods as truth, with total disregard to Plaintiff's Due Process and Human Rights.

5. Defendant's defamatory statements made in the form of a press conference and television interviews have been disseminated and continue to be published till this day to diverse media outlets, including but not limited to, newspapers, radio, television, and the internet all of which are seen in Central America, South America, Caribbean, Europe, the United States and, particularly in South Florida.

6. Defendant successfully used his control and influence of the media to destroy Plaintiff's reputation, cause him to be the subject of ridicule, hatred, contempt, and disgrace and to falsely accuse him of having committed a crime.

## Jurisdiction and Venue

7. This is an action for damages in excess of $100,000,000.00, exclusive of interests, costs and attorney's fees and is otherwise within the jurisdiction of this Court.

8. Plaintiff resides in Miami, Florida; Bogota, Colombia; and Mexico D.F., Mexico and derives business in different markets including Miami-Dade County, Florida.

9. Defendant is a resident of San Salvador, El Salvador and, based upon information and belief, he owns several bank accounts and other assets in the State of Florida, directly and indirectly using different nominees.

10. The Court has jurisdiction over the Defendant pursuant to Section 48.193(1)(b) of the Florida Statutes, because Defendant has committed his tortious acts, in Florida.

11. Venue is proper in Miami-Dade County as Defendant committed the tort of defamation in this County, by disseminating false statements and causing injury to Plaintiff throughout the United States, Europe, Central America, South America, and the Caribbean, including Miami-Dade County, and, therefore, Defendant is subject to personal jurisdiction by this Court.

12.   Additionally, Defendant caused his defamatory statements about Plaintiff, by posting these statements on several websites, which are accessible in Florida and are actually accessed in South Florida. Internet Solutions Corp. v. Marshall, 39 So. 3d 1201, 1216 (Fla. 2010).

13.   Defendant together with other conspirators, which Plaintiff reserves the right to add in this lawsuit upon completion of discovery, have also caused the Ministry of Justice and Security, and other governmental agencies of the Republic of El Salvador to issue a decree ordering Plaintiff's arrest, upon his entry in said country, without probable cause, without Plaintiff ever been charged, convicted or sentenced for the crimes that Defendant falsely, maliciously and intentionally disseminated globally as facts, depriving Plaintiff reasonable access or remedy in the Republic of El Salvador.

14.   All the necessary conditions precedent to the bringing of this action have been satisfied or waived by the Defendant.

### Factual Background

15.   At all times material hereto, Plaintiff is a political and media consultant to individuals and political groups throughout Latin America, the Caribbean, South America and South Florida. He assists in formulating political strategy, managing publicity, and analyzing public data such as polls and other statistical studies.

16.   Plaintiff had established a successful career as an international political advisor, strategist, consultant and publicist by providing assistance in formulating presidential, gubernatorial and mayoral, and other political campaigns in the Western Hemisphere.

17.   Defendant is the current Minister of Justice and Security for the Republic of El Salvador.

18.   In a sinister smear campaign against the presidential candidates of the primary opposing political party, and individually and as the main spokesperson for the former terrorist organization, National Liberation Front Farabundo Marti ("FMLN"),

and to suppress and to bolster the false statements about Plaintiff, Defendant gave a press conference on February 1, 2014.

19.    In the press conference of February 1, 2014, Defendant, with malice and in total disregard to the truth, made several false statements, which include, but are not limited to the following:

    a.    Plaintiff is an accused rapist, and "committed the crime of sexual violence against a female citizen";

    b.    Plaintiff is a rapist, and this incident "occurred in the Republic of Panama in a hotel where a violent and aggressive rape against a Venezuelan citizen was committed."

    c.    Plaintiff is a fugitive from justice, who has a red alert from Interpol, for having committed an act of sexual violence against a female citizen from Venezuela.

    d.    Plaintiff is a rapist;

    All of these statements are false and defamatory in nature.

20.    These statements were made with actual malice or reckless disregard for the truth, with the sole purpose of drawing negative media attention and discredit the presidential candidate for the National Republican Aliance Party ("ARENA") and Plaintiffs role as a political strategist and consultant.

21.    Defendant's malicious and reckless falsehoods have caused Plaintiff permanent and irreparable harm to his reputation in South Florida and all over Latin America, affecting his present and future contracts for his services as political advisor and marketing strategist, and causing substantial economic harm in excess of $100,000,000.00.  Additionally, as a direct and proximate cause of Defendant's defamatory statements disseminated to the international media, Plaintiff has suffered shame, humiliation, mental anguish and distress.

## COUNT I- DEFAMATION

22.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 21 as if fully

4
CHOI & MENEZES, LLP
1925 Brickell Avenue, Suite D205, Miami, Florida 33129 * Telephone: 305.854.6333 * Facsimile: 305.675.0967

https://www2.miami-dadeclerk.com/ocs/ViewerHTML5.aspx?QS=B6%2f9EwnZlIiih%2b...    4/13/2017

set forth herein.

23.  By the statements detailed above in paragraphs 1 through 21, Defendant has knowingly and intentionally committed multiple acts of defamation against Plaintiff.

24.  Defendant's defamatory statements are false statements of fact, published to third parties, and made with Defendant's knowledge that their falsity or with reckless disregard for the truth.  These false statements were made for the purpose of being disseminated and published in the State of Florida.

25.  Defendant acted with malice, without justification or privilege, and with specific intent to injure Plaintiff by falsely portraying him as having committed criminal acts, thereby permanently tainting the public's perception of Plaintiff and his activities as an individual and as a political consultant.

26.  As a direct and proximate result of Defendant's willful and malicious conduct, Plaintiff has been greatly injured in his reputation.  He has been subjected to ridicule, hatred, contempt, and has sustained economic loss, loss of employment, and loss of potential employment.

27.  As a result of the intentional, wanton and malicious nature of Defendant's false and defamatory statements, Plaintiff also pleads for a punitive damages award to deter the Defendant from any such future actions.

28.  Plaintiff reserves the right to amend this complaint to add additional counts for Malicious Prosecution and Abuse of Process upon completion of Discovery.

WHEREFORE, Plaintiff, JUAN JOSE RENDON, demands judgment for compensatory damages in excess of $100,000,000.00, punitive damages and costs against Defendant RICARDO PERDOMO, and granting him any other relief this Court may deem just and proper.

5
CHOI & MENEZES, LLP
1925 Brickell Avenue, Suite D205, Miami, Florida 33129 * Telephone: 305.854.6333 * Facsimile: 305.675.0967

https://www2.miami-dadeclerk.com/ocs/ViewerHTML5.aspx?QS=B6%2f9EwnZlIiih%2b...   4/13/2017

## DEMAND FOR JURY TRIAL

Plaintiff, JUAN JOSE RENDON, demands a trial by jury as to all issues so triable.

**Dated: February 7, 2014.**

Respectfully submitted,

CHOI & MENEZES, LLP
1925 Brickell Avenue, Suite D-205
Miami, Florida 33129
Telephone: (305) 854 6333
Facsimile: (305) 675 0967

By:

IL YOUNG CHOI, ESQ.
Florida Bar No. 10375

# EXHIBIT 7

CFN: 20150306406 BOOK 29614 PAGE 2578
DATE:05/13/2015 11:00:49 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE, COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

RENDON, JUAN JOSE

          Plaintiff(s)

vs.
PERDOMO, RICARDO

          Defendant(s)

CASE NO.  14- 3564-CA-01

Section No.  30

CIVIL DIVISION

Motion, Notice and

Judgment of Dismissal

---

**FINAL ORDERS AS TO ALL PARTIES**
SRS DISPOSITION
NUMBER                    12
THE COURT DISMISSES THIS CASE AGAINST
ANY PARTY NOT LISTED IN THIS FINAL ORDER
OR PREVIOUS ORDER(S). THIS CASE IS CLOSED
AS TO ALL PARTIES.
Judge's Initials   NSL

---

               ORDER ON MOTION TO DISMISS
                FOR LACK OF PROSECUTION

          THIS CAUSE having come on to be heard pursuant to Rule
1.420 of the Fla.R.Civ.P. and the Court being fully advised in
the premises.

          [X] THE COURT FINDS that no party opposing the motion to dismiss
          for lack of prosecution having appeared as ordered and
          demonstrated the existence of the requisite record activity or
          that action had been stayed nor having timely filed a showing
          of good cause in writing, if required, and therefore, in the
          absence of any evidence to the contrary, the Court finds that
          (1) notice prescribed by Rule 1.420(e) was timely served; (2)
          there was no record activity during the 10 months immediately
          preceding service of the foregoing notice; (3) there was no
          record activity during 60 days immediately following service of
          the foregoing notice; (4) no stay has been issued or approved by
          the Court; and (5) no party has shown good cause why this action
          should remain pending;

THEREFORE, IT IS ORDERED that this action is dismissed for lack of prosecution.

          [ ] THE COURT FINDS good cause why this action should remain pending;
          therefore, IT ORDERED AND ADJUDGED that the Motion to Dismiss for Lack of
Prosecution pursuant to Florida Rule of Civil Procedure 1.420(E), is hereby
DENIED.

DONE and ORDERED in Chambers at Miami-Dade County, Florida this _____ day of

**MAY 0 6 2015**
_____

                                        _____
                                             Circuit Court Judge

cc:   Counsel/Parties of Record

**If you are a person with a disability who needs any accommodation in
order to participate in this proceeding, you are entitled, at no cost to
you, to the provision of certain assistance. Please contact the Eleventh
Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse
Center, 175 NW 1st Ave., Suite 2702, Miami, FL. 33128, Telephone
(305) 349-7175; TDD (305) 349-7174; Fax (305) 349-7355; at least 7 days
before your scheduled court appearance, or immediately upon receiving
this notification, if the time before the scheduled appearance is less than
7 days; if you are hearing or voice impaired, call 711.**

CLOCK IN

2015 MAY 12   AM 8: 39   FILED

ORIGINAL
JUDGE NORMA S. LINDER

                                                           264

World +                                              Live TV

# Alleged hacker video roils last days of Colombian presidential campaign

**By Rafael Romo, Senior Latin American Affairs Editor**

Updated 10:24 PM ET, Mon May 19, 2014



Presidential candidate Oscar Ivan Zuluaga defends himself after a news magazine magazine revealed a video showing the candidate meeting a man accused of illegal hacking.

## Story highlights

A video purports to show Colombian presidential challenger with accused hacker

Óscar Iván Zuluaga denies charge, says incumbent Juan Manuel Santos created "a vulgar montage"

The hacking suspect is accused of running office that intercepted e-mails from FARC talks

The top two contenders disagree about negotiating with the Marxist FARC guerrillas

A hacker scandal involving a video is sending shockwaves through Colombia's presidential campaign just days before Sunday's election, making the already volatile electoral process even more contentious as parties accuse each other of dirty tricks and schemes.

The video published by the weekly news magazine "Semana" in Bogotá allegedly shows Óscar Iván Zuluaga, the leading presidential candidate, getting secret military information from a man who was arrested earlier this month and accused of illegal hacking activities.

Andrés Sepúlveda, 29, was arrested on May 5 and accused of "managing an illegal office dedicated to intercepting emails from between those close to the

peace dialogues in Havana (Cuba)," according to a news release published by the Colombian attorney general's office. World +          Live TV

The government of President Juan Manuel Santos, who is running for re-election, has held peace talks with the Marxist FARC guerrillas since late 2012.

Authorities confiscated 69 pieces of evidence, including computers and USB drives belonging to the suspect, according to the attorney general's office.

Zuluaga told reporters the five-minute video is "a vulgar montage" put together to smear his campaign.

"This video montage is a trap. It's no coincidence that it's been published when I'm on top in the polls and the president is going down," Zuluaga said.

Santos has not commented directly on the video.

A poll published by Ipsos Napoleon Franco on Friday, before the scandal broke, said Zuluaga would receive 29.5% of the vote versus 28.5% for Santos. Colombian law forbids the publication of polls seven days before a presidential election, so there's no way of knowing whether the scandal has changed last week's percentages.

Former President Alvaro Uribe, a Zuluaga supporter, called the video "a montage" and suggested the scandal is the creation of the Santos campaign.

"(Andrés Sepúlveda) is an alleged 'hacker' who has worked with (Venezuelan political strategist) J.J. Rendón, who's close to President Santos. In the video, they show Óscar Iván Zuluaga getting information that has already been in the rumor mill and has no relevance," Uribe said.

Rendón had been working for the Santos campaign but resigned earlier this month after accusations surfaced that he had received $12 million from drug traffickers in exchange for political favors in the Santos government. In the past, Rendón worked for Uribe.

Enrique Peñalosa, the Alianza Verde (Green Alliance) presidential candidate, told CNN affiliate Caracol TV he believes Zuluaga has committed a serious crime.

"We're talking about the crime of illegal wiretapping, conspiracy to commit a crime, and the crime of using military information and intelligence. We Colombians cannot resign ourselves to this. These are not the leaders we want," Peñalosa said.

Javier Restrepo, a pollster with Ipsos Napoleon Franco, says Colombian voters essentially face one choice: Do they vote for the candidate who wants peace talks with the FARC or the one who wants the guerrillas to surrender?

"The difference regarding the candidates' position in the economy and other issues is minimal, but when it comes to how to handle the guerrilla, it's abysmal," Restrepo said.

"Santos is advocating for a continuation of the peace talks he started in 2012, while Zuluaga's position is that there should not be a dialogue with an illegal guerrilla until its fighters surrender to government forces and lay down their weapons," Restrepo said.

There are five presidential candidates, but the only two with a real possibility of winning are Zuluaga and Santos, according to Restrepo. Colombian electoral law says to win a presidential election, a candidate must obtain 50% of the vote plus one vote, which means a second round on June 15 is very likely.

**Paid Content** World **+**

Recommended by





We Tried HelloFresh: Here's
What Happened

*Popdust*



These Photos Show What
Life in North Korea is Really
Like

*Travelwhip*

North Korea's Supreme
Military Compared To The
US

*HistoryInOrbit.com*



Enjoy the Perks of Senior
Living with AARP Now and
Get 25% Off Your First Year

*AARP - How to Join AARP*



Raquel Welch Just Turned
77 & Is Unrecognizable
Today [Gallery]

*Its The Vibe*

A Writing from 1450 BC Can
Solve the Alien Mystery on
Earth

*Bob's Hideout*

**Paid Content**

Farmer And His Wife Make History With An
Ancient Find [Gallery] *Nocartridge*

These Real Titanic Photos Are Simply
Heartbreaking *Standard News*

These 99 Retirement Tips May Surprise You
*Fisher Investments*

App made by 100+ linguists gets you
speaking a new language in 3... *Babbel*

**More from CNN**

See Irma from 45,000 feet in the air

Joel Osteen responds to critics on Harvey

The 5-year-old girl who opened the world's
eyes to Yemen's plight

Ancient Roman city found underwater

Recommended by



Case 1:17-cv-21192-KMW    Document 20-1    Entered on FLSD Docket 09/11/2017    Page 37 of 40



# Mrs. Obama gets in 'Formation' for 'Bey Day' and other things this week

0 comments ═══════════════════════════════

**Sign in**

**Newest** | **Oldest** | **Hot Threads**

Powered by Livefyre

# EXHIBIT 9

# Opposition Hacker Andrés Sepúlveda Sentenced To 10 Years In Prison For Spying On Colombia Peace Process

Like | Twitter | Comment | Email

By Natalie Roterman | Apr 12 2015, 03:43PM EDT



Hacker Andrés Sepúlveda has been sentenced to 10 years in prison after being convicted guilty of several criminal charges including illegal interception, abusing access to classified information, espionage and use of illegal software. YouTube

After **Andrés Sepúlveda**, a former employee of a presidential candidate **Óscar Iván Zuluaga** from the 2014 political elections, admitted to have **intercepted communications** of FARC negotiators, of the top guerrilla leader **Rodrigo Londoño**, alias "Timochenko," and of Liberal ex-Senator **Piedad Cordoba**, among others, he **accepted the prosecution's offer** of a reduced penalty in exchange for his cooperation. After verifying the legality of the agreement, Sepúlveda received his sentence after being convicted guilty of five charges, including illegal interception, abusing access to classified information, espionage and use of illegal software according to the Bogota court.

The judge explained 10 years is the maximum sentence possible for Sepúlveda as a reduced penalty on top of paying a pay a fine of approximately $30,000 as part of the agreement. Before hearing his sentence, the hacker read a statement offering an apology to the armed forces and the Colombian police: "I deeply regret the damage I caused them. Every day I regret the damage caused to their good name and honor," he said. Sepúlveda expressly skipped his apology to the FARC but begged for pardon to all the people involved in the investigative, the prosecutors, and police, attorneys and judges.

"I'm here with my head held high, and I will keep my end of the bargain by cooperating and collaborating with the government despite being called a liar and lunatic." Sepúlveda added that his worst mistake was to mix his work with politics, "All of my actions to fight against terrorism became death wounds when I got involved in the 2014 elections campaign." He concluded with a phrase from "The Count Of Monte Cristo": "It's necessary to have wished for death in order to know how good it is to live."



Hacker Andrés Sepúlveda has been sentenced to 10 years in prison after being convicted guilty of several criminal charges including illegal interception, abusing access to classified information, espionage and use of illegal software. YouTube