UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 17-21192-CIV-WILLIAMS/TORRES

JUAN JOSÉ RENDÓN,

       Plaintiff,

vs.

BLOOMBERG, L.P.,
ET. AL.

       Defendant.

_____/

### ORDER

**THIS MATTER** is before the Court on a motion to dismiss, (DE 52), filed by

Defendants Bloomberg L.P. ("Bloomberg"), Bloomberg Businessweek ("Businessweek"),

Jordan Robertson ("Robertson"), and Michael Riley ("Riley").  Plaintiff, Juan José Rendón

("Rendón"), filed a response in opposition (DE 56), to which Defendants filed a reply (DE

60).   For the reasons set forth below, Defendants' motion to dismiss (DE 52) is

**GRANTED.**

### I.    BACKGROUND

Plaintiff Rendón's complaint arises from allegedly defamatory statements in an

article published by Defendants, titled "How To Hack an Election" ("the Article"). (DE 43

at 1).   The Article focuses on interviews with Andres Sepúlveda ("Sepúlveda"), a

convicted hacker and cyberterrorist, in which he recounts his experience hacking political

campaigns across Latin America. (DE 43 at 19).   The Article states that Sepúlveda

claimed to have committed cyber-attacks on campaigns at the behest of Rendón.   (DE

43 at 76).  Rendón denies this claim alleging that Sepúlveda's statement—that Rendón

paid him cash to hack the private and public content of political opponents—is false and defamatory.  (DE 56 at 12).

The Article was published online on March 31, 2016, (DE 43 at 40), and in print on April 4-10, 2016 (DE 43 at 45).  On August 16, 2016 Rendón wrote to Defendants Bloomberg and Businessweek requesting a retraction.  Rendón filed an amended complaint on September 14, 2018, alleging three counts of defamation for three publications of the Article: online, (DE 43 at 40), in print domestically (DE 43 at 44), and in print internationally, (DE 43 at 51), respectively.[1]  Additionally, Rendón brings four more counts of defamation for comments made in interviews by the Defendants while marketing the Article: CNN En Español on April 1, 2016, (DE at 43 at 56), Notiguía.TV Online Show on April 1, 2016, (DE 43 at 59), Radio Fórmula Show on April 1, 2016, (DE 43 at 62), and PRI Public International Radio Show on April 1, 2016 (DE 43 at 65).  Finally, Rendón brings a count of Negligent Supervision of its employees against Defendants Bloomberg and Businessweek.  (DE 43 at 68).

---

[1] Rendón filed his first complaint on March 30, 2017, almost a year after requesting a retraction.  By agreement of the Parties, the deadline to respond to the complaint was extended to September 11, 2017.  (DE 14).  On September 11, 2017 Defendants filed a first motion to dismiss the complaint (DE 20) and on May 8, 2018 Defendants filed a second motion to dismiss the complaint for lack of subject matter jurisdiction (DE 25).  On May 21, 2018, Rendón filed a motion for leave to amend the complaint (DE 27) which the Court granted on September 13, 2018 (DE 41).  On September 14, 2018 Rendón filed his amended complaint (DE 43) and on October 15, 2018 Defendants filed their motion to dismiss the amended complaint (DE 52).

Defendants objected to Magistrate Judge Edwin Torres' order granting Rendon's motion for leave to amend his complaint.  (DE 47).  On May 9, 2019, the Court denied Defendants' objections.  (DE 62).

## II.    LEGAL STANDARD

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  To survive a motion to dismiss, a complaint must contain sufficient facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plaintiffs make a facially plausible claim when they plead factual content from which the court can reasonably infer that defendants are liable for the misconduct alleged. *Iqbal*, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. *Id.* at 1950.

Although the court resolves all doubts or inferences in the plaintiff's favor, the plaintiff bears the burden to frame the complaint with sufficient facts to suggest that he is entitled to relief. *Twombly*, 550 U.S. at 556.  A pleading that offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. *Id.* at 557.  Dismissal pursuant to a Rule 12(b)(6) motion is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Shands Teaching Hosp. and Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000) (quoting *Hishon v. King & Spalding*, 476 U.S. 69, 73 (1984)).

## III.    DISCUSSION

Defendants move to dismiss the complaint on several grounds.  First, Defendants argue that this Court lacks subject matter jurisdiction over Rendón's claims.  Second,

Defendants argue that Rendón failed to satisfy the condition precedent created by Section 770.01 of the Florida Statutes.  Finally, Defendants argue that the Complaint fails to state a claim upon which relief can be granted because (1) the Article is protected by the neutral reporting privilege; (2) the Complaint does not plausibly allege that Defendants acted with actual malice; and (3) Counts IV, V and VI are time-barred.  The Court agrees that Rendón failed to satisfy the condition precedent required by Section 770.01 of the Florida Statutes and that the Article is protected by the neutral reporting privilege.

### a.  Florida Statutes, Section 770.01

Defendants contend that Rendón did not satisfy the condition precedent created by Florida Statutes, Section 770.01. (DE 52 at 26).  Defendants first argue that Counts I, II, and III should be dismissed because Rendón's notice "did not identify the alleged false and defamatory statements with requisite specificity."  (DE 52 at 27).  Next, Defendants submit that Counts IV, V, VI, and VII should be dismissed because "Rendón's retraction notice did not identify the interviews as false and defamatory."  (DE 52 at 28).  Third, Defendants argue that all counts against Robertson and Riley should be dismissed because "Rendón did not serve a retraction notice on either of them."  (DE 52 at 29).[2]

Florida Statutes Section 770.01 provides newspapers and publications with the "opportunity in every case to make a full and fair retraction," serving the ultimate purpose of protecting the free dissemination of news to the public.  *See Ross v. Gore*, 48 So. 2d 412, 415 (Fla. 1950).  The statute reads as follows:

> Before any civil action is brought for publication or broadcast,
> in a newspaper, periodical, or other medium, of a libel or
> slander, the plaintiff shall, at least 5 days before instituting

---

[2] Rendón refers to his retraction in his amended complaint as "Exhibit C" but attaches no such document.  (DE 43 at 38).  Accordingly, this Court will rely on the retraction letter attached to Defendant's Motion to Dismiss as Exhibit 19 (DE 52-1 at 99).

> such action, serve notice in writing on the defendant
> specifying the article or broadcast and the statements therein
> which he or she alleges to be false and defamatory.

FLA. STAT. § 770.01. The statute and its supporting case law establish that written notice on the defendant is a condition precedent to a claim for defamation. *See Ross*, 48 So. 2d at 415 ("It must be held, therefore, that the giving of notice in writing is a condition precedent to suit"); *see also Orlando Sports Stadium v. Sentinel Star Company*, 316 So.2d 607 (Fla. 4th DCA 1975) (finding a retraction notice was not in compliance with Florida Statutes Section 770.01 where it was served after the defamation complaint was filed). "If the time to comply with the statutory precondition has expired, the action should be dismissed with prejudice."[3] *City of Coconut Creek v. City of Deerfield Beach*, 840 So.2d 389, 393 (Fla. 4th DCA 2003); *see Bayliss v. Cox Radio, Inc.*, No. 8:10-CV-1030-T27MAP, 2010 WL 4023459 (M.D. Fla. Oct. 13, 2010) (dismissing a defamation claim without prejudice where the plaintiff failed to comply with Section 770.01 but had time remaining in the statutory period, reasoning that because the statute of limitations had not run, there was time to cure the deficiency).

First, the Court grants Defendants Bloomberg and Businessweek's Motion to Dismiss Counts I, II, and III because the retraction letter submitted by Rendón did not provide sufficient notice to the Defendants under Section 770.01, Florida Statutes.  The pre-suit statute requires that the retraction letter specify the statements within the subject article which the plaintiff alleges to be false or defamatory.  FLA. STAT. ANN. § 770.01 (West).  Plaintiff maintains that his retraction letter was compliant because it "explicitly

---

[3] Florida law provides a two-year statutory period for libel or slander claims. FLA. STAT. § 95.11(4)(g). The statutory period for libel accrues at the time of publication. FLA. STAT. § 770.07. The Article was published on March 31, 2016 (DE 43 at 40). Accordingly, the statute of limitations expired as of March 31, 2018.

identified the article in question," and "the article's entire thesis serves as the basis of Mr. Rendón's defamation claim." (DE 56 at 23). Defendants argue that the retraction letter fails because it does not include verbatim quotation of the allegedly defamatory material, and therefore does not provide the "best possible notice." (DE 52 at 17) (citing *Nelson v. Associated Press*, 667 F. Supp 1468, 1474–1475 (S.D. Fla. 1987). The Court agrees that the retraction letter does not meet the specificity standard set forth for in Florida Statutes Section 770.01 and Florida common law.

Where the subject article is in print, the best possible notice under Florida Statutes Section 770.01 would include reference to the subject article and verbatim quotes from it. *See Nelson*, 667 F. Supp at 1474 ("Clearly, Plaintiff … could have specifically referred to [the articles] and quoted from them verbatim in her notice to AP, yet failed to. In this situation, the Court finds as a matter of law that § 770.01 has not been complied with."); *see also Gannett Florida Corp. v. Montesano*, 308 So.2d 599 (Fla. 1st DCA1975) (finding that a retraction letter which referred to the specific article but generally alleged that the article "imputed a crime on" the plaintiff did not meet the specificity requirements of Florida Statutes Section 770.01).

In the instant case, Rendón's retraction letter does refer to the article "How to hack an election." (DE 52-1 "Exhibit 19" at 99). However, the only statement that the retraction letter references, is not itself a direct quote from the Article, but more a summary: "Rendón hired Andres Sepúlveda to 'rig elections throughout Latin America.'" (*Id.*). All other allegations from the article are referred to generally, such as the following excerpt: "False allegations in the Article that Mr. Rendón somehow procured, directed, engaged in, or condoned criminal and/or unethical conduct to 'hack' or 'rig' elections throughout Latin

America falsely attack Rendón's character . . . ." (*Id.* at 101).  Although he argues in his response that the entirety of the article is defamatory to his character, (DE 56 at 23), Rendón's amended complaint states with specificity exactly which parts of the article were false or defamatory, (DE 43 at 41—43).  The specificity with which the amended complaint alleges the article's defamatory statements is evidence of the notice Rendón was capable of providing in his pre-suit retraction letter.  (DE 43 at 41).  While the amended complaint is indicative of the detail and particular information available to Rendón, the general allegations employed in his retraction letter do not meet the threshold for specificity set forth by well-established case law.  *See, e.g.*, *Nelson*, 667 F. Supp at 1474 (reasoning that the best possible notice under the statute was reference to specific article and quotes from it "because the fact is that [p]laintiff was capable of doing so.").

Moreover, the case cited by Rendón is readily distinguishable.  In *Duffy v. Fox News Networks, LLC*, No. 14-CV-1545, 2015 WL 2449576 *1 (M.D. Fla. May 20, 2015), the plaintiff sued Fox for an allegedly defamatory cellphone video that was broadcasted on the news, depicting the plaintiff as a thief.  The plaintiff sent Fox pre-suit notice which contained a link to the broadcast segment and its related article, stating the "imputations of theft" were defamatory. *Id.* at *2. The court held that the pre-suit notice was sufficient because it identified the source of the defamatory material. *Id.*  However, *Duffy* was based on defamatory statements made in an oral broadcast, not print media.  And, "when the cause of action for defamation is based on oral statements, it is sufficient that the plaintiff set out the substance of the spoken words with sufficient particularity to enable the court to determine whether the publication was defamatory."  *See Edward L. Nezelek v. Sunbeam TV Corp.*, 413 So. 2d 51, 55, (Fla. 3d DCA 1982).

By contrast, where the suit arises from a printed article the law is clear that the best possible notice consists of direct quotes because they are available to the plaintiff at the time of the article's publication. *See Nelson,* 667 F. Supp at 1474; FLA. STAT. § 770.01 (requiring that the notice specifies the article and "the statements therein").  Because the defamatory materials in the instant case arise from print media, and not from oral broadcast, the best possible notice consists of verbatim quotes.  Accordingly, Counts I, II, and III of the complaint must be dismissed with prejudice because the retraction letter failed to meet the specificity requirements of Section 770.01 and the statute of limitations for a defamation suit has run.  *See City of Coconut Creek,* 840 So.2d at 393.[4]

Counts IV, V, VI, and VII against Bloomberg and Businessweek must also be dismissed with prejudice because Rendón did not provide notice to the Defendants of suit for their statements made in their subsequent interviews and statements.  The amended complaint fails to allege that Rendón provided Bloomberg or Businessweek with notice of suit for statements made on the en Español Television show, Notiguía.Tv Online show, Radio Fórmula Show, and PRI Public International Radio Show, respectively.  (DE 43 at 39).  The retraction letter makes no mention of the broadcasts in even the most general sense.  (DE 52-1 "Exhibit 19" at 99).  Accordingly, because compliance with the condition

---

[4] Also, Rendón's claim that Defendants waived their objection to the pre-suit notice by responding to it and refusing to issue a retraction is unpersuasive. Florida courts of appeal have found pre-suit notices insufficient even when defendants have replied to those notices and refused to publish a retraction. *See, e.g., Gannett Florida Corp. v. Montesano,* 308 So.2d 599 (Fla. 1st DCA 1975); *see also Cousins v. Post-Newsweek Stations Fla., Inc.,* No. 3D17-2805, 2019 WL 692823 (Fla. 3d DCA Feb. 20, 2019), reh'g denied (May 22, 2019) (finding Defendant did not waive its objection to Section 770.01's pre-suit notice requirement even though Defendant did not raise a lack of notice until it responded to an amended complaint).

precedent and subsequent refiling of the suit is time-barred, Counts IV, V, VI, and VII are dismissed with prejudice.

Additionally, all counts against Defendants Robertson and Riley are dismissed with prejudice on the basis that they were not served with a pre-suit notice under 770.01, and any further lawsuits against them regarding the Article are time-barred.  Rendón argues that because Defendants Robertson and Riley are the employees of Defendants Bloomberg and Businessweek, the retraction letter addressed to the corporate defendants put all defendants on notice.  (DE 56 at 24).  First, the Court already decided that the retraction letter was not sufficient to put the defendants on notice.  Second, notice may not be imputed to Defendants Robertson and Riley.  Rendón argues that because the retraction letter was served on Robertson and Riley's employers, Bloomberg and Businessweek, service on the individual reporters was not required under the statute.  However, this argument fails as Florida courts have held that reporters are protected by the pre-suit notice statute, just as publications are.  *See Mancini v. Personalized Air Conditioning & Heating, Inc.*, 702 So. 2d 1376, 1378 (Fla. 4th DCA 1997) (finding that under Florida Statutes 770.01, Plaintiff had to provide pre-suit notice to columnist in addition to the newspaper because otherwise "if both the newspaper and the reporter were sued and a retraction printed, the corporate publisher of the newspaper would be protected from punitive damages, while the reporters, editorial writers and columnists would not."); *see also* FLA. STAT. § 770.01 (requiring plaintiff to "serve notice in writing <u>on the defendant</u>") (underline added).

Finally, because all underlying tort claims have been dismissed, Rendón's claim for Negligent Supervision (Count VIII) must also be dismissed.  *See Gutman v. Quest*

*Diagnostics Clinical Labs.*, Inc., 707 F. Supp. 2d 1327, 1331—1332 (S.D. Fla. 2010) (dismissing a claim for negligent supervision of employees where the underlying tort was dismissed due to failure to comply with a pre-suit notice statute); *see also Footstar Corp. v. Doe*, 932 So.2d 1272, 1278 ("Under Florida law, the underlying wrong allegedly committed by an employee in a negligent supervision or negligent retention claim must be based on an injury resulting from a tort which is recognized under common law.") quoting *Scelta v. Delicatessen Support Servs., Inc.,* 57 F. Supp.2d 1327 (M.D. Fla.1999) (internal quotations omitted).

### b. Florida's Neutral Reporting Privilege

Rendón's complaint also fails as a matter of law, because the Article is protected by Florida's neutral reporting privilege.   Under Florida law, it is well settled that disinterested communications of matters of public concern are privileged, even if defamatory. *See Abram v. Odham*, 89 So. 2d 334, 336 (Fla. 1956); *Huszar v. Gross*, 468 So.2d 512, 516 (Fla. 1st DCA 1985).  "However, neutral reporting privilege is only extended to disinterested and neutral reporting by members of the media." *Ortega Trujillo v. Banco Cent. Del Ecuador*, 17 F. Supp. 2d 1334, 1338 (S.D. Fla. 1998).  Additionally, whether the neutral reporting privilege protects the Article is a legal determination that the Court can resolve on a motion to dismiss. *Id.*

The Court finds that the Article is the type of disinterested and neutral reporting that Florida law and the First Amendment is designed to protect.  The main focus of the Article is the hacking activities conducted by Sepúlveda throughout Latin America.  In the print version of the Article, the Article's name "How to Hack and Election" is immediately followed by the following statement: "Andres Sepúlveda claims he spent eight years

10

disrupting campaign across Latin America." (DE 43 at 74). In the online version of the Article, the title is followed by this language: "Andres Sepúlveda rigged elections throughout Latin America for almost a decade. He tells his story for the first time." (DE 43 at 81). In addition, the body of the Article makes clear that the story is being told by Sepúlveda. Throughout the Article, the reporters consistently identify the fact that the matters reported do not reflect their opinion but is Sepúlveda's story, his version of the facts discussed. To illustrate, the Court cites portions of some of the relevant passages:

- For eight years, Sepúlveda, now 31, <u>says</u> he traveled the continent rigging major political campaigns. (DE 43 at 83) (underline added);

- Usually, <u>he says</u>, he was on the payroll of Juan Jose Rendon. (DE 43 at 85) (underline added);

- Sepúlveda provided Bloomberg Businessweek with what <u>he says</u> are e-mails showing conversations between him, Rendón, and Rendón's consulting firm concerning hacking and the progress of campaign-related cyber attacks. (*Id.*) (underline added);

- Rendón, <u>says</u> Sepúlveda, saw that hackers could be completely integrated into a modern political operation... (DE 43 at 88) (underline added);

- **According to Sepúlveda, his payments** were made in cash, half upfront. (*Id.*) (bold in original).

Moreover, the Article also makes clear, that Plaintiff denied Sepúlveda's account:

- Rendón denies using Sepúlveda for anything illegal, and categorically disputes the account Sepúlveda gave *Bloomberg Businessweek* of their relationship, but admits knowing him and using him to do website design. "If I talked to him maybe once or twice, it was in a group session about that, about the Web," he says. "I don't do illegal stuff at all. There is negative campaigning. They don't like it – OK. But if its legal, I'm gonna do it. I'm not a saint, but I'm not a criminal." (DE 43 at 85);

- Rendón says the emails are fake. (*Id.*);

- Rendón denies working with Sepúlveda in any meaningful capacity. "He says he worked with me in 20 places, and the truth is he didn't," Rendón says. "I never paid Andres Sepúlveda a peso." (DE 43 at 99).

And, as the complaint alleges, Sepúlveda's hacking activities were the subject of significant media attention before Bloomberg published the Article, which demonstrates that the information is newsworthy.  (DE 43 ¶39) ("Sepúlveda's arrest and illegal activities … became international news and were widely reported on in Colombia and in international media outlets.").   Accordingly, the Court finds that the Article is a disinterested account of newsworthy information.

In his response to the motion to dismiss, Rendón argues that Defendants' motion should be denied for several reasons.  First, Rendón argues that the U.S. Constitution does not recognize a neutral reporting privilege.  Second, he argues that even if it did, the motion should be denied because (1) the neutral reporting privilege does not protect defamatory statements against private figures; (2) the Article was not "accurate and disinterested"; (3) Sepúlveda was not a "responsible" or "prominent" source and (4) the Article was not about a "newsworthy controversy."  Rendón's arguments fail.

In a footnote and without citing any authority, Rendón argues that whether the neutral reporting privilege protects Defendants' statements is governed by "federal question and not [ ] state law." (*See* DE 56 at 20 n.14).  Rendón then goes on to analyze cases from other circuits rejecting the neutral reporting privilege and concludes that the Supreme Court has "declined to recognize the privilege."  However, "[d]efamation is an area of state law, and the various defamation privileges are an integral part of the law of defamation." *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 707 (7th Cir. 1994).  Indeed, earlier this year, the Eleventh Circuit ruled in a defamation case that state law (New York) applied to Defendant's fair reporting privilege defense.  *See Nix v. ESPN, Inc.*, 772 F. App'x 807, 812 (11th Cir. 2019).  Thus, Plaintiff's argument that this issue

involves a "federal question" analysis and that Florida case law does not control is erroneous. *See Ortega Trujillo v. Banco Central del Ecuador*, 17 F. Supp. 2d 1334, 1338 (S.D. Fla. 1998) (relying on Florida state court decisions to analyze the neutral reporting privilege).

Rendón's remaining arguments also fail. The Court has determined that the Article is a disinterested account of a newsworthy controversy and need not repeat those findings here. (*See supra* at 9-11). Additionally, whether Rendón is a public figure and whether Sepúlveda is a reliable source is not dispositive of the issue. Indeed, in *Smith v. Taylor Cty. Pub. Co.*, 443 So.2d 1042, 1044 (Fla. 1st DCA1983) the court of appeals affirmed the trial court's determination that a news story was protected by the neutral reporting privilege even though the plaintiff was not a public figure and the source was not reliable. There, plaintiff alleged that defendants had published defamatory statements in the *Perry News-Herald* in a story that reported that Sadler (a third party) had claimed that plaintiff had physically assaulted him. Because the article merely recounted Sadler's statements and also reported that plaintiff had been contacted and refused to comment, the court found that the story was protected by the neutral reporting privilege, even though plaintiff was not a public figure and Sadler was not a "prominent" or particularly "reliable" source.

The Court has not found, and Rendón has not pointed to, any Florida case requiring that plaintiff be a public figure or that the source of an article need be reliable for the neutral reporting privilege to apply. Although Plaintiff points to several cases in other states and circuits, the stubborn fact is that defamation claims, including its privileges and defenses are governed by state law. *See Henry v. Cisco Sys., Inc.*, 106

F. App'x 235, 243 (5th Cir. 2004) (in diversity cases courts must "determine which state's law applies to the plaintiff's state law [defamation] claims, including its privileges"); *see also Lee v. Bankers Tr. Co.*, 166 F.3d 540, 545 (2d Cir. 1999) (applying New Jersey law to plaintiff's defamation claims); *Nix*, 772 F. App'x 807 at 812 (applying New York defamation laws); *Ortega Trujillo*, 17 F. Supp. 2d at 1338 (applying Florida law to defendant's neutral reporting privilege defense). And, under Florida law, statements are protected by the neutral reporting privilege if they are disinterested accounts of newsworthy events. Here, the Article is exactly the type of reporting that the neutral reporting privilege is intended to protect.[5]

## IV.    CONCLUSION

For the reasons set forth above, it is **ORDERED AND ADJUDGED** that Defendants' motion to dismiss (DE 52) is **GRANTED** and Plaintiff's amended complaint (DE 43) is **DISMISSED WITH PREJUDICE**. All other motions are **DENIED AS MOOT**. The Clerk of the Court is directed to **CLOSE** this case. The Court will enter final judgment separately pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 2 day of September, 2019.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

[5] Because the Court's order dismisses Plaintiff's complaint with prejudice for his failure to satisfy the requirements of Florida Statute Section 770.01 and because the Article is protected by the neutral reporting privilege, the Court need not address the Parties' remaining arguments.