# Exhibit 1 (Redacted)

```
                                          Page 1
 1            IN THE UNITED STATES COURT OF APPEALS
 2                 FOR THE ELEVENTH CIRCUIT
 3            ------------------------
 4                    No. 19-14046
 5            ------------------------
 6            JUAN JOSE RENDON DELGADO,
 7                          Plaintiff-Appellant
 8                         v.
 9      BLOOMBERG L.P., JORDAN ROBERTSON, MICHAEL RILEY
10                          Defendants-Appellees
11            ------------------------
12      On Appeal from the United States District Court
13          For the Southern District of Florida
14            D.C. Docket No. 1:17-cv-21192-KMW
15            ------------------------
16                   Oral Argument
17                 December 18, 2024
18
19
20
21   B E F O R E:
22   HON. ELIZABETH BRANCH
23   HON. BRITT GRANT
24   HON. ROBERT LUCK
25   Circuit Judges
```

Page 2

```
 1   A P P E A R A N C E S:

 2

 3   Counsel for Plaintiff-Appellant:

 4

 5   CLARE LOCKE

 6         10 Prince Street

 7         Alexandria, VA 22314

 8

 9   BY:  JOSEPH R. OLIVERI

10

11   Counsel for Defendants-Appellees:

12

13   GUNSTER, YOAKLEY & STEWART, PA

14         600 Brickell Avenue, Ste 3500

15         Miami, FL 33131

16

17   BY:  TIMOTHY J. MCGINN

18

19

20

21

22

23

24

25
```

Page 3

1                    P R O C E E D I N G S
2           CLERK: Hearing ye, hear ye, hear ye.
3    The United States Court of Appeals of the 11th
4    Circuit is now open according to law.  God save
5    the United States and this honorable court.
6               HON. ELIZABETH BRANCH:  Please be
7    seated.  Welcome.  Just by way of introduction
8    for any, if anybody here is new and doesn't know
9    that we operate on the traffic light system.  At
10   the, at the two-minute mark, you'll get the
11   yellow light.  At the red light, if you could
12   just finish your sentence or thought.  Don't go
13   on, don't move on to a different topic, and that
14   would be great.
15           This is 19-14046 Juan Delgado versus
16   Bloomberg LP et al.  Mr. Oliveri, I see that you
17   have reserved some time for rebuttal, but you may
18   proceed.
19           MR. OLIVERI:  Thank you, Your Honor.
20   May it please the Court, my name is Joe Oliveri
21   on behalf of the plaintiff, appellant Juan Jose
22   Rendon Delgado, Mr. Rendon.
23           Your Honors, this appeal arises from
24   two primary errors by the district court.  First,
25   the district court's novel recognition of an

```
                                        Page 4
 1    exceedingly broad neutral reportage privilege, an
 2    absolute newsworthiness privilege under Florida
 3    law.
 4           No Florida court has adopted such a
 5    privilege.  The Florida Supreme Court in the
 6    Miami Herald v. Ane case, citing U.S. Supreme
 7    Court precedent, rejected any such
 8    newsworthiness-based privilege.  And an absolute
 9    news -- neutral reportage privilege is contrary
10    to U.S. Supreme Court precedent that rejects
11    absolutely, absolute immunity from defamation
12    liability as an untenable construction of the
13    First Amendment.
14           HON. ELIZABETH BRANCH:  Suppose we
15    disagree with you.  Suppose we say that Florida
16    does, in fact, have a neutral reporting
17    privilege.  Do you lose?
18           MR. OLIVERI:  Absolutely not, Your
19    Honor.  To that point, even if the Court were to,
20    were to say that the privilege exists, the
21    district court misapplied the privilege here.
22    The privilege, as articulated by the Edwards
23    panel, was carefully circumscribed in part
24    because of the breadth of the privilege that that
25    court, according to the Edwards panel,
```

Page 5

1    recognized.

2            It only applies to serious charges

3    against a public figure made by a responsible,

4    prominent figure or organization that is

5    neutrally and disinterestedly reported.  And it

6    also does not apply to statements published or

7    events published for the first time or

8    investigative reporting because the theory

9    undergirding the privilege, that the media's

10   privilege to publish about a raging controversy

11   does not support that.

12           Here, Your Honor, none of those, of

13   those elements are satisfied.  The publication

14   was not a neutral disinterested report.  The

15   Bloomberg repeatedly bolstered the credibility of

16   the informant, Mr. Sepulveda, who himself was not

17   a prominent responsible person or organization.

18           Mr. Sepulveda is a convicted

19   incarcerated fraudster.  He was --

20           HON. ELIZABETH BRANCH:  But the, but

21   the report indicated as much.

22           MR. OLIVERI:  The report did indicate

23   that he was, he was incarcerated, but that

24   doesn't change --

25           HON. ELIZABETH BRANCH:  So how does

Page 6

```
 1   that not contribute to the neutral reporting
 2   privilege if the publication is, in fact,
 3   acknowledging that their source is, in fact, a
 4   convicted felon?
 5           MR. OLIVERI:  So that that would go to
 6   the disinterested portion of the -- and maybe
 7   militate in favor of that.  However, for the
 8   privilege to apply, it has to be a prominent
 9   source.  That's a metric for, or an indicia of
10   newsworthiness.
11           So the court, the Edwards court said,
12   look, in that case it was the National Audubon
13   Society.  Here you have a convicted fraudster.
14   So the privilege doesn't apply even if it were a
15   disinterested accounting.
16           That said --
17           HON. ELIZABETH BRANCH:  Sure you --
18   surely, you're not suggesting that a convicted
19   fraudster can't also be a national figure.
20           MR. OLIVERI:  It could be a prominent
21   figure, perhaps.
22           HON. ELIZABETH BRANCH:  Or a prominent
23   figure.
24           MR. OLIVERI:  However, it is not a
25   responsible figure.  It has to be a responsible,
```

```
                                            Page 7
 1    prominent figure or organization.  In the case of

 2    Edwards, again, the National Audubon Society and

 3    their scientists are not only prominent, but also

 4    responsible.

 5            Here we have a fraudster, an admitted

 6    liar who Bloomberg was publishing statements of.

 7            In any event, Bloomberg elicited these

 8    statements for the very first time.  They

 9    admitted that before their -- publishing their

10    interview with Sepulveda, his allegations had not

11    been published.  They, Bloomberg elicited them

12    for the first time.  That was part of their

13    investigative reporting.

14            So here, there was no raging

15    controversy already going on that Bloomberg could

16    have just reported on.  So the privilege doesn't

17    apply for that reason.

18            In addition, Mr. Rendon has not been

19    held to be a public figure.  The privilege is

20    limited to serious charges against public

21    figures.  Here again, under --

22            HON. BRITT GRANT:  Is it, if there's an

23    article about someone's kind of work and

24    personality and the nature of this article,

25    doesn't that go pretty far towards showing that
```

Page 8

1    this person is a public figure?

2            MR. OLIVERI:  Judge Grant, I think what

3    you're getting to there is whether someone can be

4    made a public figure, whether a defendant can

5    make an otherwise or previously private person a

6    public figure.  Under the Saro case, under Bair,

7    Bair v. -- under Bair -- let me give you a

8    citation for that.

9            HON. BRITT GRANT:  Sure.

10           MR. OLIVERI:  397 So.2d 926, the

11   defendant cannot, through his own actions, create

12   his defense by making someone a public figure.

13           So here, the mere fact that a

14   previously private figure, and he is private

15   until proven otherwise, is reported on by

16   Bloomberg does not then transform him and, in

17   effect, create, enable Bloomberg to satisfy an

18   element to the privilege through its own work.

19           MR. OLIVERI:  But I guess what I'm

20   saying is not that the article made him a public

21   figure, but that the kind of discussion of the

22   things that he had done in public life themselves

23   demonstrate that he already was a public figure.

24   I mean, a public figure, I think, has not been a

25   narrow categorization in Supreme Court precedent

Page 9

1    or otherwise.

2            MR. OLIVERI:  Courts have interpreted

3    it broadly in various circumstances.  However,

4    here, Judge Grant, it is an inherently fact-bound

5    question.  And until proven to be a public figure

6    for the purposes of these proceedings, he is a

7    private figure.  It's a fact-bound question that

8    this Court should not, certainly should not

9    entertain in the first instance.

10            HON. BRITT GRANT:  So you think that's

11   something that the district court would need to

12   decide as a factual matter?

13            MR. OLIVERI:  In order to transform Mr.

14   Rendon into a public figure, the district court

15   would need to factually find the predicate there.

16   Did he thrust himself generally voluntarily into

17   a raging controversy?

18            But I don't, I don't want to lose the

19   forest for the trees, Your Honor, here because

20   again, it's not, it was also not a disinterested

21   account.  We talked about what, you know,

22   acknowledging that Mr. Sepulveda was a fraudster.

23            However, Bloomberg published many of

24   his accusations as unqualified facts, not just

25   saying Sepulveda alleged X, Y, Z, but that these

Page 10

1   facts were, in fact, that, facts that are true.

2   And they also bolstered Mr. Sepulveda's

3   credibility, saying he appeared authentic.  You

4   know, according to sources, which we don't

5   identify, you know, his allegations have been

6   corroborated.

7            So Bloomberg was putting its thumb on

8   the scale there and giving credit to Mr.

9   Sepulveda.  So again, for all these reasons, even

10  if a neutral reportage privilege were recognized,

11  it would not apply on the facts here.

12           HON. BRITT GRANT:  Well, let's say for

13  purposes of this question that I agree that

14  there's no neutral reporting privilege, at least

15  in Florida.

16           MR. OLIVERI:  Sure.

17           HON. BRITT GRANT:  I think it matters

18  perhaps whether your client is a public figure

19  because I'm not certain that actual malice was

20  sufficiently alleged.  What's your response to

21  that suggestion?

22           MR. OLIVERI:  Respectfully, Judge

23  Grant, I don't think this will surprise you to

24  hear me say that I do think it was more than

25  sufficiently alleged in the complaint.  And

```
                                              Page 11
```

 1    again, on a motion to dismiss, we're looking at

 2    the complaint, taking the allegations as true.

 3            Here, we allege the actual malice.

 4    Many circumstantial evidence that indicate actual

 5    malice was published here, or that it was

 6    published with actual malice here.  But again,

 7    the district court did not reach this because

 8    they kicked it on the privilege issue.

 9            But if Your Honor is concerned about

10    actual malice, before Bloomberg published the

11    article, Mr. Rendon had provided them with

12    substantial information showing that look, he did

13    not rig or engage in electioneering here.  He did

14    not work with Sepulveda at all, except for on a

15    single solitary web design project and thus

16    everything that Bloomberg said about his work

17    with Sepulveda was false.

18            HON. BRITT GRANT:  But do we have any

19    allegations that Bloomberg knew that those

20    allegations were false and published them anyway

21    with reckless disregard for their truth?

22            MR. OLIVERI:  So of course until

23    discovery opens you don't have internal documents

24    that demonstrate this conclusively.  We're in a

25    pre-discovery phase where circumstantial evidence

Page 12

1   is more than sufficient.  You look at the

2   totality of the circumstances here that Bloomberg

3   received information that contradicted what they

4   were going to be publishing, that they refused to

5   retract the article despite being served with a

6   three-page detailed retraction demand.

7           All those are certain categories of

8   circumstantial evidence that together build the

9   wall, brick by brick, of actual malice.  And I

10  think, you know, there's plenty of those

11  allegations in the complaint.  Happy to cite a

12  few, a few more when I return here.

13          But for present purposes, again, the

14  district court didn't reach it, but the

15  allegations in the complaint viewed in their

16  totality as they must be, present, I would

17  submit, a compelling case for actual malice here.

18          HON. ELIZABETH BRANCH:  Let me turn you

19  quickly to the pre-suit notice.  Under Florida

20  law, the statute, Florida Statute 770.01, in

21  particular, Counts 4 through 7.  How are those

22  claims, how are those claims not properly

23  dismissed for lack of pre-suit notice?

24          MR. OLIVERI:  So in this case, Judge

25  Branch, although they were not mentioned in the

Page 13

```
 1    pre-suit notice, Bloomberg has waived that
 2    defense.  Bloomberg, I see my time's expired, if
 3    I may answer your question.
 4              HON. ELIZABETH BRANCH:  Yes, please.
 5              MR. OLIVERI:  Thank you, Judge Branch.
 6    What Bloomberg did here is they had an
 7    opportunity.  They moved to dismiss before the
 8    statute of limitations expired.  They didn't
 9    raise a notice defense.  They moved to dismiss
10    again, didn't raise it.  Only over a year and a
11    half after this case was filed, after the statute
12    of limitations expired, did Bloomberg raise this
13    for the first time.
14              Under Florida law, the Supreme Court
15    case Ingersoll, a defendant that sleeps on its
16    rights that waits strategically to say, aha, I
17    got you, now it has to be dismissed, waives that
18    defense.  Thank you, Your Honors.
19              HON. ELIZABETH BRANCH:  Thank you.  You
20    have five minutes for rebuttal.  Mr. McGinn.  You
21    may proceed.
22              MR. MCGINN:  Good afternoon.  May it
23    please the Court, Timothy McGinn of Gunster on
24    behalf of the Bloomberg defendants.  Surely,
25    Bloomberg is the rare defendant to argue with the
```

Page 14

1   benefit of an order granting dismissal with

2   prejudice to argue that that order should be set

3   aside.  But nevertheless, here we are.

4           The court below lacked subject matter

5   jurisdiction, and that lack of subject matter

6   jurisdiction compels dismissal under Rule

7   12(b)(1) without reaching the merits of the

8   plaintiff's claim.  Should the Court disagree, of

9   course, and in the alternative, the Court should

10  affirm Judge Williams' well-founded order

11  dismissing the plaintiff's claims on their

12  merits.

13          I think given that hierarchy, it makes

14  sense to begin with the jurisdictional issue.

15  The problem this Court faces is that the reason

16  for which this matter was originally remanded to

17  determine whether or not Mr. Rendon had been

18  stripped of his citizenship by the government of

19  Venezuela is ultimately not a question that has

20  been answered by the district court here.

21          Judge Williams, in her order, concluded

22  that Mr. Rendon had not abandoned his Venezuelan

23  citizenship but did not engage with the crucial

24  question, the one that was raised by Mr. Rendon's

25  original complaint, which is whether or not he

Page 15

1  had been disavowed by the Venezuelan government,

2  had been stripped of his citizenship.  And that

3  question, and as to that question, Mr. Rendon has

4  not carried his burden of establishing that he

5  remains a citizen of Venezuela.

6           HON. ROBERT LUCK:  Isn't that finding

7  implicit though within the district court's

8  finding regarding that Mr. Rendon is a citizen of

9  Venezuela?  In other words, it was teed up to the

10  district court about this issue of divestment.

11  The district court simply said, I've had a

12  hearing, we've looked at all the evidence.  The

13  preponderance shows that he's a citizen.  Isn't

14  implicit within that a rejection of the

15  divestment argument?

16           MR. MCGINN:  It could be, but there's

17  been no engagement with the underlying arguments

18  regarding estoppel, regarding the Act of State

19  doctrine.  There was no analysis given to those

20  issues, those fundamental issues which are

21  presented to this Court effectively for the first

22  time.

23           HON. ROBERT LUCK:  Well assume that the

24  district court ruled against you in all of those

25  things, and so you're here -- up against their

Page 16

1    standard of review.  How would you win up against
2    that standard of review?
3              MR. MCGINN:  Well, the standard of
4    review is de novo, Your Honor.  Any instance in
5    which this Court reviews a finding of lack of
6    subject matter jurisdiction is subject to this
7    Court --
8              HON. ROBERT LUCK:  Well, that is, but
9    the subsidiary findings of fact are reviewed for
10   clear error, are they not?
11             MR. MCGINN:  I don't believe so, Your
12   Honor, but to your Honor's point, I don't think
13   the facts are actually in dispute here.  There is
14   a question regarding the import of those facts,
15   but there's been no finding as to whether or not
16   the Venezuelan government attempted to revoke Mr.
17   Rendon's citizenship.
18             In fact, in his operative complaint in
19   Paragraph 50, Mr. Rendon continues to say that
20   the government of Venezuela has attempted to
21   disavow itself of him.
22             The dispute is not as to what the
23   government of Venezuela did, but the legal import
24   of those facts.  So even if it were a question,
25   even if the standard of review were clear error

Page 17

1   as to the facts, we're not disputing the facts

2   here.  The facts are, the facts are undisputed.

3   It's just a question of what those facts mean and

4   whether a federal court is entitled to look

5   behind those facts and determine what their

6   effectiveness would be under Venezuelan law.

7            HON. BRITT GRANT:  What -- I thought

8   that your friends on the other side made an

9   interesting point when they said, what is the Act

10  of State that you're claiming that we should

11  defer to?  What is the specific act that you say

12  this Court and the United States need to

13  recognize?

14           MR. MCGINN:  It is the disavowal of Mr.

15  Rendon.  That is, in fact, specifically alleged

16  by him to be an act of stripping Mr. Rendon of

17  his fundamental right of citizenship in page, in

18  Paragraph 50 of his original complaint.

19           But I also think it --

20           HON. BRITT GRANT:  I guess I'm saying

21  on what day in what document with what words are

22  you looking at?

23           MR. MCGINN:  Yeah.  I don't know that

24  there's any one specific act that we could point

25  to in that fashion.  And I would refer Your Honor

Page 18

```
 1   to Justice Marshall's dissent in the Alfred
 2   Dunhill case, which notes that while governments
 3   do ordinarily act through edicts, through
 4   decrees, the acts of a government are entitled to
 5   no less weight under the Act of State doctrine
 6   when they act in an irregular fashion as you
 7   might expect of --
 8            HON. BRITT GRANT:  Do you have that in
 9   a majority opinion anywhere?
10            MR. MCGINN:  I do not, Your Honor.  So
11   that, that is, that is the best authority for
12   that proposition.  But we also have different
13   indicia of the revocation of his citizenship, and
14   they are detailed at length in Mr. Rendon's own
15   testimony.  He said that one of the indicia of
16   the revocation of his citizenship was the
17   revocation of his passport, the fact that he
18   attempted to renew his passport and was denied
19   that revocation.  The fact that mister --
20            HON. ELIZABETH BRANCH:  But have we
21   held in any case that the revocation of a
22   passport under, without any other facts, is
23   enough to indicate that we should be applying the
24   Act of State doctrine?  I know you're going to
25   point to Dunhill, but that was a unique
```

                                                              Page 19

1    situation, I think, like in a state of war.  Is

2    that a material fact that would distinguish this?

3              MR. MCGINN:  Well in the Underhill case

4    --

5              HON. ELIZABETH BRANCH:  Underhill case.

6              MR. MCGINN:  The U.S. Supreme Court

7    pointed to the fact that the denial of issuance

8    of a passport was an Act of State, in fact, by a

9    general acting on behalf of the state of

10   Venezuela.

11             But there are other indicia here.  Mr.

12   Rendon not only had his passport revoked but then

13   procured for himself from other Latin American

14   governments travel documents specifically for

15   stateless persons.  Those were issued to him by

16   the governments of Colombia and Honduras.

17             HON. ELIZABETH BRANCH:  But surely you

18   would acknowledge those are not acts of

19   Venezuela.

20             MR. MCGINN:  They are not, but they are

21   indicia of the fact that Venezuela had revoked

22   his citizenship.  So even if we can't identify

23   the specific edict or the specific proclamation

24   by which Mr. Rendon was divested of his

25   citizenship, there are other indications that the

Page 20

```
 1   Venezuelan government acting irregularly had
 2   acted in a manner so as to indicate that it had
 3   revoked his citizenship and that is the standard.
 4   The standard is --
 5              HON. ROBERT LUCK:  Have we or the
 6   Supreme Court ever applied the Act of State
 7   doctrine where you're unable to identify the
 8   specific Act of State as you've, as you've, as
 9   you've admitted here that we don't know?
10              MR. MCGINN:  I'm not, I'm not aware of
11   any instance, but the standard is, citing the
12   Ricaud v. American Metal Company case, when it is
13   made to appear that the foreign government has
14   acted in a given way on the subject matter of the
15   litigation, the details of such action or the
16   merit of the result cannot be questioned but must
17   be accepted by our courts as a rule for their
18   decisions.
19              So we have Mr. Rendon's initial
20   admission that he'd been stripped of his
21   citizenship.  We have the corroborating evidence
22   in the form of the travel documents he obtained
23   for stateless persons, ████████████████████████
24   ██████████████████████████████████████████████
25   ██████████████████████████████████████████
```

Page 21

```
 1           HON. ROBERT LUCK:  Didn't the district
 2  court make a finding regarding the Honduras and
 3  Colombian documents?
 4           MR. MCGINN:  No.  The magistrate judge
 5  said that with regard to Mr. Rendon's travel
 6  documents to the United States, that he was
 7  entitled to amend, but I'm not aware of any
 8  holding that said that that was evidence that he
 9  had not been stripped of his citizenship.
10           It may speak to the fact that he did
11  not -- or it may not be evidence that he did not
12  abandon his citizenship, but it is not -- the
13  district court did not speak to whether or not
14  he'd surrendered his citizenship.  So it was not
15  a finding as to as to that, Judge Luck.
16           HON. ROBERT LUCK:  Here's -- there was
17  a finding as to those documents, was there not?
18           MR. MCGINN:  Not as to whether or not
19  he'd been divested --
20           HON. ROBERT LUCK:  That's not -- listen
21  to my question.  Was there a finding as to those
22  documents?
23           MR. MCGINN:  Yes, but --
24           HON. ROBERT LUCK:  What was the
25  finding?
```

```
                                           Page 22

 1              MR. MCGINN:  They were not evidence, as
 2   I recall, that he had abandoned his citizenship,
 3   which is --
 4              HON. ROBERT LUCK:  Here's, let me read
 5   it to you exactly since you and I are having a
 6   communication issue.  "Testimonial evidence
 7   demonstrates that Mr. Rendon's intent in
 8   obtaining travel documents from Colombia and
 9   Honduras was not to declare himself as stateless,
10   but to obtain necessary documentation to legally
11   travel throughout a foreign country."
12              MR. MCGINN:  Which is evidence that he
13   did not intend to abandon his citizenship, but --
14              HON. ROBERT LUCK:  That he, that he was
15   not to declare himself as stateless.  Nothing to
16   do with abandonment.
17              MR. MCGINN:  We don't dispute that he
18   has not declared himself to be stateless.  The
19   question is whether the government of Venezuela
20   has divested him of his citizenship.
21              HON. ROBERT LUCK:  I agree that is the
22   question.
23              MR. MCGINN:  Yes.  So it's not a, it's
24   not a finding that weighs on that question of
25   whether or not --
```

Page 23

```
 1          HON. ROBERT LUCK:  It's a finding that
 2   those documents don't say anything about whether
 3   he's stateless or not.  That's what it finds,
 4   that's what it is.
 5          MR. MCGINN:  The underlying
 6   requirements for obtaining those documents are
 7   such that Mr. Rendon could only have applied for
 8   them and been eligible for them as a stateless --
 9          HON. ROBERT LUCK:  I know you make that
10   point in your briefs or in your supplemental
11   authority, but the district court made a finding
12   regarding that.  It's hard for me to see how that
13   finding is clearly erroneous, which is what we'd
14   have -- what we'd have to find in order to ignore
15   it.
16          MR. MCGINN:  It's erroneous in the
17   context of the broader circumstances, all the
18   evidence as to, as to Mr. Rendon's citizenship as
19   to his original admission, as to the procurement
20   of those documents for stateless persons, ███████
21   ████████████████████████████████████████████████
22   ████████████████████████████████████████████████
23   ████████████   Within that broader context, it is
24   clearly erroneous.
25          HON. BRITT GRANT:  Did you want to take
```

```
                                          Page 24
 1    some time to address the neutral reporter
 2    privilege or anything about the substantive
 3    issues of the case?
 4             MR. MCGINN:  I did, yes, Your Honor.
 5    Thank you for directing me to those.  I think the
 6    -- there are a couple of points that are, that
 7    need to be raised in response to Mr. Rendon's
 8    argument.  The first is that the only
 9    requirements are as -- the only requirements are
10    that the reporter or the journalism entity
11    provide a disinterested account of newsworthy
12    information about matters of public concern.
13             HON. BRITT GRANT:  Isn't the first
14    question whether that privilege exists under
15    Florida law?
16             MR. MCGINN:  It's clear, Your Honor,
17    there have been no, there have been no instances,
18    no cases cited by Mr. Rendon in which a Florida
19    court has rejected the application of this, of
20    this privilege on the grounds that it's not
21    recognized by Florida courts.  The Ane case, to
22    which Mr. Rendon cites as evidence that it is an
23    impossibility under Florida law, simply doesn't
24    address that point.
25             The Ane case dealt with the question of
```

Page 25

1    whether actual malice or negligence would be the

2    appropriate --

3              HON. ROBERT LUCK:  I know, but the

4    absence of case law and rejection is not really a

5    great argument in favor that it exists under

6    Florida law.

7              MR. MCGINN:  Oh no, we have, there are

8    several cases cited including Smith v. Taylor,

9    the Huszar case, the Bair case.  We have cited

10   the cases that recognize the privilege.

11             HON. ROBERT LUCK:  I have to say I'm a

12   little skeptical of the PCA cases, the ones where

13   you cite the lower court order, just

14   understanding how Florida precedential law works.

15   I'm much more interested in those where an

16   appellate court has affirmatively adopted.  What

17   is the best case that an appellate court has

18   affirmatively adopted the privilege?

19             MR. MCGINN:  I think the Smith versus

20   Taylor case, which is, it is on point because

21   it's not only a case in which the appellate court

22   held that it was affirming for the reasons

23   specifically stated by the trial court, which

24   included neutral reportage, but it was also a

25   case that involved a private individual and a not

Page 26

1  particularly reputable source.  It was a dispute
2  between the publishers of two newspaper companies
3  involving a brawl between them and between their
4  allies.
5           So that case certainly stands for the
6  proposition that Florida recognizes the neutral
7  reporting privilege.
8           HON. ELIZABETH BRANCH:  I'm not sure
9  that I agree that Smith v. Taylor -- it certainly
10  doesn't say so expressly and Smith v. Taylor
11  seemed to be focusing on a couple of issues, but
12  the opinion definitely talks more about whether
13  there was opinion being expressed.
14           In fact, as best I can tell, there's
15  only one sentence that says if the column had
16  included only a reporting of what Sadler had said
17  about the alleged physical confrontation with
18  Smith, and included opinion, it would have, would
19  not have been actionable.  And that's where it
20  kind of runs off from there.  So I'm not sure
21  that this is exactly trumpeting that there is a
22  neutral reporting privilege in Florida.
23           MR. MCGINN:  It isn't, but in the
24  context, it does, it does recognize in the
25  context of other articles that were the subject

Page 27

1   of that dispute that it was affirming for the

2   other, for the reasons stated in the trial court,

3   not the, not the last article which is the

4   subject of a considerable portion of the opinion

5   but prior to that when it is discussing the

6   affirmance as to other issues.

7           I also do want to address that as to

8   Mr. Rendon, even if this were a privilege that is

9   limited to public figures, Mr. Rendon has,

10  there's no need for a remand for further fact

11  finding.  Mr. Rendon has more than alleged he is

12  a public figure.

13          At A-121, "Mr. Rendon receives

14  recognition and numerous international and

15  American awards and honors for his devotion to

16  democracy and humanitarianism.  Mr. Rendon

17  alleges he was specifically honored and

18  recognized by the U.S. Congress for his 25 years

19  of devotion to and defense of liberty, democracy,

20  and civil rights for his work in Latin America."

21          There's no doubt that even if Mr.

22  Rendon were correct that this privilege applies

23  only to newsworthy reports about public figures

24  that he would qualify.  So that is not a basis

25  for reversing as to the application of neutral

Page 28

1    reportage.

2              HON. BRITT GRANT:  We've also said, and

3    I'll give your friend on the other side a chance

4    to consider this.  We've said that public figure

5    determination "is a question of law for the court

6    to decide."  That was Michel v. NYP Holdings Inc.

7    So under that standard, let's say we agree that

8    it is a question of law.  Are we more free to

9    make that conclusion here at the appellate level

10   than we would be if it were a question of fact?

11             MR. MCGINN:  I suppose you are because

12   if it's a question of law, it's de novo review.

13   I don't think it's a requirement, so I don't

14   think you need to make that determination.  But

15   since it is a question of law, the Court could

16   certainly look at what Mr. Rendon himself has

17   alleged, which more than demonstrates that he is

18   a public figure.

19             To touch briefly on the Section 770

20   issues, Your Honors expressed concern regarding

21   the broadcast.  Mr. Rendon made no argument in

22   any of his briefing as to the broadcast

23   specifically.  Section 770 clearly requires a

24   specific identification of both the article or

25   broadcast and the statements therein that are

Page 29

1   alleged.

2           HON. ROBERT LUCK:  He says that you

3   waived it.  I mean, that's the, that's what he

4   came up here and said.  He says that you waived

5   it because you waited until after the statute of

6   limitations and raised it in the third motion to

7   dismiss.

8           MR. MCGINN:  Yeah, nothing in the

9   Federal Rules of Civil Procedure requires a

10  defendant to affirmatively raise a motion to

11  dismiss, on a motion to dismiss the failure to

12  satisfy a condition precedent.  In fact, as Mr.

13  Rendon himself recognized below and argued below,

14  typically, failure to satisfy a condition

15  precedent is addressed on a motion for summary

16  judgment, not on a motion to dismiss.

17          So he's grafting onto the Federal Rules

18  of Civil Procedure a new requirement that a

19  defendant raise for the benefit of a plaintiff

20  that has overlooked it, a new requirement that

21  the, that the defendant identify a condition

22  precedent that hasn't been satisfied,

23  notwithstanding the fact that it's not

24  dispositive or that there perhaps there isn't

25  even a sufficient basis for the court to address

```
                                                    Page 30
 1   it on that, on the face of the complaint.
 2              HON. BRITT GRANT:  Do you think Florida
 3   law governs that question or under Erie, should
 4   we look to federal procedural law instead?
 5              MR. MCGINN:  I think first you are
 6   correct, Your Honor, or your suggestion is
 7   correct.  Federal Rules of Civil Procedure govern
 8   that question.  It is a procedural question.  But
 9   second, to the extent that Florida law does
10   apply, the Ingersoll case was one in which the
11   defendant failed to raise the issue in his
12   answer, not in a motion to dismiss.  It was a
13   pleading that he had filed in which he had failed
14   to raise the issue and then had amended and
15   raised it.
16              So even then, there's no holding in
17   Florida requiring that you raise failure to
18   satisfy a condition precedent prior to the
19   running of the statute of limitations in a motion
20   to dismiss.  That Ingersoll case is a case
21   involving an answer, not a motion to dismiss.
22   Thank you, Your Honors.
23              HON. ELIZABETH BRANCH:  Thank you, Mr.
24   McGinn.  Mr. Oliveri, you have five minutes for
25   rebuttal.
```

Page 31

```
 1          MR. OLIVERI:  Thank you, Your Honors.
 2   I'd like to begin where my friend ended.  The
 3   question of pre-suit notice under Florida law is
 4   substantive.  That's the Fitchner case citing
 5   Menendez, a Florida Supreme Court decision saying
 6   that our pre-suit notice requirements are in fact
 7   substantive.  So Florida law here governs the
 8   Ingersoll case and its progeny under those cases.
 9   A failure to --
10          HON. ROBERT LUCK:  Counsel, the issue
11   of whether, the issue of the nature of the pre-
12   suit notice is maybe a matter of substantive law,
13   but whether it's waived under the rules would
14   seem to be an issue, a procedural issue, would it
15   not?
16          MR. OLIVERI:  Your, Your Honor, it's an
17   interesting dichotomy that you raise, however, I
18   think that here you're talking about a right to
19   receive pre-suit notice, which is substantive.
20   That is the basis on which a defendant is able --
21          HON. ROBERT LUCK:  Yes, but when to
22   bring up, when to bring that up in a pleading is
23   very much a procedural issue; is it not?
24          MR. OLIVERI:  Certainly.  When to bring
25   it up in a pleading, I think it would trend
```

                                                          Page 32

1    toward procedural.  However, here the right

2    extinguishes essentially upon, you know, when --

3    upon expiration of a statute of limitations when

4    a defendant chooses strategically to wait.  And

5    that fits with the court's holding, the Vondrak

6    decision that pre-suit notices are not about a

7    gotcha for defendants.

8              HON. ROBERT LUCK:  Did you forfeit this

9    issue by not raising it in front of the district

10   court?

11             MR. OLIVERI:  Absolutely not, Your

12   Honor.  It's bedrock law that parties can waive

13   issues not arguments.  We certainly challenged

14   pre-suit notice before the district court here.

15   And the fact that the specifics of a waiver

16   argument may or estoppel argument may not have

17   been presented then --

18             HON. ROBERT LUCK:  I know, but you

19   can't just say the words pre-suit notice and then

20   everything comes under that umbrella.  I mean

21   there's got to be some level of specificity for

22   the arguments you're actually relying on so a

23   district court can make an intelligent decision

24   about it and then, and then, inform us.

25             MR. OLIVERI:  Again, I think even if

Page 33

1    there were a question of waiver there, Judge

2    Luck, this does present a pure question of law

3    here on which the right to have Mr. Rendon's

4    constitutional rights, Florida's protection of

5    reputation turn.  And I would submit that it

6    would be a miscarriage of justice to say this

7    pure question of law is waived and to kick out a

8    substantial part of his case regarding these

9    other broadcasts.

10           HON. ROBERT LUCK:  What do we make on

11   the pre-suit notice of the requirement in the

12   statute of specificity and yet in the complaint,

13   in the retraction letter, there's some partial

14   quotes and a bit of a summary.  Whereas in the

15   complaint, you have 19 separate quotes and areas

16   for which you find that there's defamatory

17   conduct.  How is -- shouldn't there at least be

18   some matching between the retraction letter and

19   the complaint?

20           MR. OLIVERI:  I think there's two

21   responses to that Judge Luck.  First and

22   foremost, the purpose of the statute is to put

23   the defendant on notice so he has a meaningful

24   opportunity or it has a meaningful opportunity to

25   retract.  Here, our three-page detailed letter

Page 34

 1   did exactly that and Bloomberg responded by

 2   saying we will not revisit our reporting.  They

 3   stood on the reporting in full.  They had the

 4   opportunity.

 5            HON. ROBERT LUCK:  But they didn't know

 6   the 19 areas for which you are now saying that

 7   they're defamatory.  You had a, you gave some

 8   general gist about why you thought the guy was

 9   lying and you pointed to a few partial quotes,

10   but that's it, right?

11            MR. OLIVERI:  Sure.  To the point about

12   the 19 bullets in the complaint, Your Honor, the

13   defamation claim is both defamation and

14   defamation by implication.  Some of those

15   statements help support giving rise to

16   implications.

17            For example, one of the quoted bullets,

18   Your Honor, is that Mr. Sepulveda always insisted

19   on payments in cash.  That statement is, in

20   itself, defamatory standing alone and it wouldn't

21   make sense to demand to have to verbatim quote

22   that in a letter.

23            HON. ROBERT LUCK:  Why wouldn't it be?

24   If the implication is that that is defamatory,

25   wouldn't you have to point out that quote and

Page 35

1   what the implication is?

2          MR. OLIVERI:  Your Honor, we did point

3   out the implications in that letter.  The

4   verbatim quotation requirement, it sort of

5   doesn't make sense with regard to defamatory

6   implications because you can't quote an

7   implication.

8          But even still, the purpose of the

9   statute is not to require a plaintiff to within,

10  you know, very early on have a fully developed

11  complaint that they can serve on a defendant and

12  say, please you need to retract.  Here's our

13  ready for litigation complaint.

14         The purpose of the statute is to avoid

15  litigation.  So to impose on a plaintiff in a

16  retraction demand a requirement that they have a

17  fully-baked, essentially complaint ready to go

18  and ensures that every statement that he alleges

19  in the complaint is in that retraction demand

20  letter would disserve the purposes of the

21  statute.

22         HON. BRITT GRANT:  But isn't the --

23  weren't the allegations completely incomplete --

24  completely lacking for the broadcast interviews?

25  Were the broadcast interviews even mentioned in

```
                                                  Page 36
 1    the notice letter?
 2              MR. OLIVERI:  No.  Judge Grant, the
 3    broadcast interviews were not in the pre-suit
 4    notice.  So our position on those broadcasts is
 5    it falls to the waiver argument that defendant
 6    slept on its rights and waited too long.  The
 7    letter was directed fulsomely to the actual
 8    article.
 9              HON. BRITT GRANT:  Okay.  Thank you.
10              MR. OLIVERI:  Thank you, Your Honors.
11              HON. ELIZABETH BRANCH:  Thank you.
12    Thank you both.  We have the case under
13    advisement and court is adjourned.
14              CLERK:  All rise.
15
16
17
18
19
20
21
22
23
24
25
```

Page 37

1                    C E R T I F I C A T I O N

2

3    I, Sonya Ledanski Hyde, certify that the

4    foregoing transcript is a true and accurate

5    record of the proceedings.

6

7

8

9    _____

10

11   Veritext Legal Solutions

12   330 Old Country Road

13   Suite 300

14   Mineola, NY 11501

15

16   Date:  September 19, 2025

17

18

19

20

21

22

23

24

25

[& - alternative]                                                      Page 1

| & | 5 | acknowledge | adopted 4:4 |
|---|---|---|---|
| **&** 2:13 | **50** 16:19 17:18 | 19:18 | 25:16,18 |
| **1** | **6** | acknowledging | advisement |
| | | 6:3 9:22 | 36:13 |
| **1** 14:7 | **600** 2:14 | act 15:18 17:9 | affirm 14:10 |
| **10** 2:6 | **7** | 17:11,16,24 | affirmance |
| **11501** 37:14 | | 18:3,5,6,24 | 27:6 |
| **11th** 3:3 | **7** 12:21 | 19:8 20:6,8 | affirmatively |
| **12** 14:7 | **770** 28:19,23 | acted 20:2,14 | 25:16,18 29:10 |
| **121** 27:13 | **770.01** 12:20 | acting 19:9 | affirming |
| **12151** 37:8 | **9** | 20:1 | 25:22 27:1 |
| **18** 1:17 | | action 20:15 | afternoon |
| **19** 33:15 34:6 | **926** 8:10 | actionable | 13:22 |
| 34:12 37:16 | **a** | 26:19 | agree 10:13 |
| **19-14046** 1:4 | | actions 8:11 | 22:21 26:9 |
| 3:15 | abandon 21:12 | acts 18:4 19:18 | 28:7 |
| **1:17** 1:14 | 22:13 | actual 10:19 | aha 13:16 |
| **2** | abandoned | 11:3,4,6,10 | al 3:16 |
| | 14:22 22:2 | 12:9,17 25:1 | alexandria 2:7 |
| **2024** 1:17 | abandonment | 36:7 | alfred 18:1 |
| **2025** 37:16 | 22:16 | actually 16:13 | allegations |
| **21192** 1:14 | able 31:20 | 32:22 | 7:10 10:5 11:2 |
| **22314** 2:7 | absence 25:4 | addition 7:18 | 11:19,20 12:11 |
| **25** 27:18 | absolute 4:2,8 | address 24:1,24 | 12:15 35:23 |
| **3** | 4:11 | 27:7 29:25 | allege 11:3 |
| | absolutely 4:11 | addressed | alleged 9:25 |
| **300** 37:13 | 4:18 32:11 | 29:15 | 10:20,25 17:15 |
| **330** 37:12 | accepted 20:17 | adjourned | 26:17 27:11 |
| **33131** 2:15 | account 9:21 | 36:13 | 28:17 29:1 |
| **3500** 2:14 | 24:11 | admission | alleges 27:17 |
| **397** 8:10 | accounting | 20:20,24 23:19 | 35:18 |
| **4** | 6:15 | 23:21 | allies 26:4 |
| | accurate 37:4 | admitted 7:5,9 | alternative |
| **4** 12:21 | accusations | 20:9 | 14:9 |
| | 9:24 | | |

**[amend - broadcasts]**

**amend** 21:7
**amended** 30:14
**amendment**
  4:13
**america** 27:20
**american** 19:13
  20:12 27:15
**analysis** 15:19
**ane** 4:6 24:21
  24:25
**answer** 13:3
  30:12,21
**answered**
  14:20
**anybody** 3:8
**anyway** 11:20
**appeal** 1:12
  3:23
**appeals** 1:1 3:3
**appear** 20:13
**appeared** 10:3
**appellant** 1:7
  2:3 3:21
**appellate** 25:16
  25:17,21 28:9
**appellees** 1:10
  2:11
**application**
  24:19 27:25
**applied** 20:6
  23:7
**applies** 5:2
  27:22

**apply** 5:6 6:8
  6:14 7:17
  10:11 30:10
**applying** 18:23
**appropriate**
  25:2
**areas** 33:15
  34:6
**argue** 13:25
  14:2
**argued** 29:13
**argument** 1:16
  15:15 24:8
  25:5 28:21
  32:16,16 36:5
**arguments**
  15:17 32:13,22
**arises** 3:23
**article** 7:23,24
  8:20 11:11
  12:5 27:3
  28:24 36:8
**articles** 26:25
**articulated**
  4:22
**aside** 14:3
**assume** 15:23
**asylum** 20:24
  23:21
**attempted**
  16:16,20 18:18
**attorney's**
  20:23 23:21

**audubon** 6:12
  7:2
**authentic** 10:3
**authority** 18:11
  23:11
**avenue** 2:14
**avoid** 35:14
**awards** 27:15
**aware** 20:10
  21:7

**b**

**b** 1:21 14:7
**bair** 8:6,7,7
  25:9
**baked** 35:17
**based** 4:8
**basis** 27:24
  29:25 31:20
**bedrock** 32:12
**behalf** 3:21
  13:24 19:9
**believe** 16:11
**benefit** 14:1
  29:19
**best** 18:11
  25:17 26:14
**bit** 33:14
**bloomberg** 1:9
  3:16 5:15 7:6,7
  7:11,15 8:16
  8:17 9:23 10:7
  11:10,16,19
  12:2 13:1,2,6

13:12,24,25
  34:1
**bolstered** 5:15
  10:2
**bound** 9:4,7
**branch** 1:22
  3:6 4:14 5:20
  5:25 6:17,22
  12:18,25 13:4
  13:5,19 18:20
  19:5,17 26:8
  30:23 36:11
**brawl** 26:3
**breadth** 4:24
**brick** 12:9,9
**brickell** 2:14
**briefing** 28:22
**briefly** 28:19
**briefs** 23:10
**bring** 31:22,22
  31:24
**britt** 1:23 7:22
  8:9 9:10 10:12
  10:17 11:18
  17:7,20 18:8
  23:25 24:13
  28:2 30:2
  35:22 36:9
**broad** 4:1
**broadcast**
  28:21,22,25
  35:24,25 36:3
**broadcasts**
  33:9 36:4

**[broader - controversy]**                                                    Page 3

| | | | |
|---|---|---|---|
| **broader**  23:17 23:23 | **certify**  37:3 | **civil**  27:20 29:9 29:18 30:7 | **completely** 35:23,24 |
| **broadly**  9:3 | **challenged** 32:13 | **claim**  14:8 34:13 | **concern**  24:12 28:20 |
| **build**  12:8 | **chance**  28:3 | **claiming**  17:10 | **concerned**  11:9 |
| **bullets**  34:12 34:17 | **change**  5:24 | **claims**  12:22,22 14:11 | **concluded** 14:21 |
| **burden**  15:4 | **charges**  5:2 7:20 | **clare**  2:5 | **conclusion**  28:9 |
| **c** | **chooses**  32:4 | **clear**  16:10,25 24:16 | **conclusively** 11:24 |
| **c**  2:1 3:1 37:1,1 | **circuit**  1:2,25 3:4 | **clearly**  23:13 23:24 28:23 | **condition**  29:12 29:14,21 30:18 |
| **carefully**  4:23 | **circumscribed** 4:23 | **clerk**  3:2 36:14 | **conduct**  33:17 |
| **carried**  15:4 | **circumstances** 9:3 12:2 23:17 | **client**  10:18 | **confrontation** 26:17 |
| **case**  4:6 6:12 7:1 8:6 12:17 12:24 13:11,15 18:2,21 19:3,5 20:12 24:3,21 24:25 25:4,9,9 25:17,20,21,25 26:5 30:10,20 30:20 31:4,8 33:8 36:12 | **circumstantial** 11:4,25 12:8 | **colombia**  19:16 22:8 | **congress**  27:18 |
| | **citation**  8:8 | **colombian**  21:3 | **consider**  28:4 |
| | **cite**  12:11 25:13 | **column**  26:15 | **considerable** 27:4 |
| | **cited**  24:18 25:8,9 | **comes**  32:20 | **constitutional** 33:4 |
| | **cites**  24:22 | **communication** 22:6 | **construction** 4:12 |
| | **citing**  4:6 20:11 31:4 | **companies**  26:2 | **context**  23:17 23:23 26:24,25 |
| **cases**  24:18 25:8,10,12 31:8 | **citizen**  15:5,8 15:13 20:25 23:22 | **company**  20:12 | **continues** 16:19 |
| **cash**  34:19 | | **compelling** 12:17 | **contradicted** 12:3 |
| **categories**  12:7 | **citizenship** 14:18,23 15:2 16:17 17:17 18:13,16 19:22 19:25 20:3,21 21:9,12,14 22:2,13,20 23:18 | **compels**  14:6 | **contrary**  4:9 |
| **categorization** 8:25 | | **complaint** 10:25 11:2 12:11,15 14:25 16:18 17:18 30:1 33:12,15 33:19 34:12 35:11,13,17,19 | **contribute**  6:1 |
| **certain**  10:19 12:7 | | | **controversy** 5:10 7:15 9:17 |
| **certainly**  9:8 26:5,9 28:16 31:24 32:13 | | | |

[convicted - dismissal]                                           Page 4

**convicted**  5:18
6:4,13,18
**correct**  27:22
30:6,7
**corroborated**
10:6
**corroborating**
20:21
**counsel**  2:3,11
31:10
**country**  22:11
37:12
**counts**  12:21
**couple**  24:6
26:11
**course**  11:22
14:9
**court**  1:1,12
3:3,5,20,24 4:4
4:5,7,10,19,21
4:25 6:11,11
8:25 9:8,11,14
11:7 12:14
13:14,23 14:4
14:8,9,15,20
15:10,11,21,24
16:5,7 17:4,12
19:6 20:6 21:2
21:13 23:11
24:19 25:13,16
25:17,21,23
27:2 28:5,15
29:25 31:5
32:10,14,23

36:13
**court's**  3:25
15:7 32:5
**courts**  9:2
20:17 24:21
**create**  8:11,17
**credibility**  5:15
10:3
**credit**  10:8
**crucial**  14:23
**cv**  1:14

**d**

**d**  3:1
**d.c.**  1:14
**date**  37:16
**day**  17:21
**de**  16:4 28:12
**dealt**  24:25
**december**  1:17
**decide**  9:12
28:6
**decision**  31:5
32:6,23
**decisions**  20:18
**declare**  22:9,15
**declared**  20:25
22:18 23:22
**decrees**  18:4
**defamation**
4:11 34:13,13
34:14
**defamatory**
33:16 34:7,20

34:24 35:5
**defendant**  8:4
8:11 13:15,25
29:10,19,21
30:11 31:20
32:4 33:23
35:11 36:5
**defendants**
1:10 2:11
13:24 32:7
**defense**  8:12
13:2,9,18
27:19
**defer**  17:11
**definitely**  26:12
**delgado**  1:6
3:15,22
**demand**  12:6
34:21 35:16,19
**democracy**
27:16,19
**demonstrate**
8:23 11:24
**demonstrates**
22:7 28:17
**denial**  19:7
**denied**  18:18
**design**  11:15
**despite**  12:5
**detailed**  12:6
18:14 33:25
**details**  20:15
**determination**
28:5,14

**determine**
14:17 17:5
**developed**
35:10
**devotion**  27:15
27:19
**dichotomy**
31:17
**different**  3:13
18:12
**directed**  36:7
**directing**  24:5
**disagree**  4:15
14:8
**disavow**  16:21
**disavowal**
17:14
**disavowed**  15:1
**discovery**
11:23,25
**discussing**  27:5
**discussion**  8:21
**disinterested**
5:14 6:6,15
9:20 24:11
**disinterestedly**
5:5
**dismiss**  11:1
13:7,9 29:7,11
29:11,16 30:12
30:20,21
**dismissal**  14:1
14:6

**dismissed**
   12:23 13:17
**dismissing**
   14:11
**dispositive**
   29:24
**dispute**   16:13
   16:22 22:17
   26:1 27:1
**disputing**   17:1
**disregard**
   11:21
**dissent**   18:1
**disserve**   35:20
**distinguish**
   19:2
**district**   1:12,13
   3:24,25 4:21
   9:11,14 11:7
   12:14 14:20
   15:7,10,11,24
   21:1,13 23:11
   32:9,14,23
**divested**   19:24
   21:19 22:20
**divestment**
   15:10,15
**docket**   1:14
**doctrine**   15:19
   18:5,24 20:7
**document**
   17:21
**documentation**
   22:10

**documents**
   11:23 19:14
   20:22 21:3,6
   21:17,22 22:8
   23:2,6,20
**doubt**   27:21
**dunhill**   18:2,25

**e**

**e**   1:21,21 2:1,1
   3:1,1 37:1
**early**   35:10
**edict**   19:23
**edicts**   18:3
**edwards**   4:22
   4:25 6:11 7:2
**effect**   8:17
**effectively**
   15:21
**effectiveness**
   17:6
**electioneering**
   11:13
**element**   8:18
**elements**   5:13
**eleventh**   1:2
**elicited**   7:7,11
**eligible**   23:8
**elizabeth**   1:22
   3:6 4:14 5:20
   5:25 6:17,22
   12:18 13:4,19
   18:20 19:5,17
   26:8 30:23

   36:11
**enable**   8:17
**ended**   31:2
**engage**   11:13
   14:23
**engagement**
   15:17
**ensures**   35:18
**entertain**   9:9
**entitled**   17:4
   18:4 21:7
**entity**   24:10
**erie**   30:3
**erroneous**
   23:13,16,24
**error**   16:10,25
**errors**   3:24
**essentially**   32:2
   35:17
**establishing**
   15:4
**estoppel**   15:18
   32:16
**et**   3:16
**event**   7:7
**events**   5:7
**evidence**   11:4
   11:25 12:8
   15:12 20:21
   21:8,11 22:1,6
   22:12 23:18
   24:22
**exactly**   22:5
   26:21 34:1

**example**   34:17
**exceedingly**   4:1
**except**   11:14
**exists**   4:20
   24:14 25:5
**expect**   18:7
**expiration**   32:3
**expired**   13:2,8
   13:12
**expressed**
   26:13 28:20
**expressly**   26:10
**extent**   30:9
**extinguishes**
   32:2

**f**

**f**   1:21 37:1
**face**   30:1
**faces**   14:15
**fact**   4:16 6:2,3
   8:13 9:4,7 10:1
   16:9,18 17:15
   18:17,19 19:2
   19:7,8,21
   21:10 26:14
   27:10 28:10
   29:12,23 31:6
   32:15
**facts**   9:24 10:1
   10:1,11 16:13
   16:14,24 17:1
   17:1,2,2,3,5
   18:22

[factual - hearing]                                      Page 6

**factual** 9:12
**factually** 9:15
**failed** 30:11,13
**failure** 29:11
  29:14 30:17
  31:9
**falls** 36:5
**false** 11:17,20
**far** 7:25
**fashion** 17:25
  18:6
**favor** 6:7 25:5
**federal** 17:4
  29:9,17 30:4,7
**felon** 6:4
**figure** 5:3,4
  6:19,21,23,25
  7:1,19 8:1,4,6
  8:12,14,21,23
  8:24 9:5,7,14
  10:18 27:12
  28:4,18
**figures** 7:21
  27:9,23
**filed** 13:11
  30:13
**find** 9:15 23:14
  33:16
**finding** 15:6,8
  16:5,15 21:2
  21:15,17,21,25
  22:24 23:1,11
  23:13 27:11

**findings** 16:9
**finds** 23:3
**finish** 3:12
**first** 3:24 4:13
  5:7 7:8,12 9:9
  13:13 15:21
  24:8,13 30:5
  33:21
**fitchner** 31:4
**fits** 32:5
**five** 13:20
  30:24
**fl** 2:15
**florida** 1:13 4:2
  4:4,5,15 10:15
  12:19,20 13:14
  24:15,18,21,23
  25:6,14 26:6
  26:22 30:2,9
  30:17 31:3,5,7
**florida's** 33:4
**focusing** 26:11
**foregoing** 37:4
**foreign** 20:13
  22:11
**foremost** 33:22
**forest** 9:19
**forfeit** 32:8
**form** 20:22
**founded** 14:10
**fraudster** 5:19
  6:13,19 7:5
  9:22

**free** 28:8
**friend** 28:3
  31:2
**friends** 17:8
**front** 32:9
**full** 34:3
**fully** 35:10,17
**fulsomely** 36:7
**fundamental**
  15:20 17:17
**further** 27:10

**g**

**g** 3:1
**general** 19:9
  34:8
**generally** 9:16
**getting** 8:3
**gist** 34:8
**give** 8:7 28:3
**given** 14:13
  15:19 20:14
**giving** 10:8
  34:15
**go** 3:12 6:5
  7:25 35:17
**god** 3:4
**going** 7:15 12:4
  18:24
**good** 13:22
**gotcha** 32:7
**govern** 30:7
**government**
  14:18 15:1

16:16,20,23
  18:4 20:1,13
  22:19
**governments**
  18:2 19:14,16
**governs** 30:3
  31:7
**grafting** 29:17
**grant** 1:23 7:22
  8:2,9 9:4,10
  10:12,17,23
  11:18 17:7,20
  18:8 23:25
  24:13 28:2
  30:2 35:22
  36:2,9
**granting** 14:1
**great** 3:14 25:5
**grounds** 24:20
**guess** 8:19
  17:20
**gunster** 2:13
  13:23
**guy** 34:8

**h**

**half** 13:11
**happy** 12:11
**hard** 23:12
**hear** 3:2,2
  10:24
**hearing** 3:2
  15:12

**[held - issues]** Page 7

held 7:19 18:21
25:22
help 34:15
herald 4:6
hierarchy
14:13
holding 21:8
30:16 32:5
holdings 28:6
hon 1:22,23,24
3:6 4:14 5:20
5:25 6:17,22
7:22 8:9 9:10
10:12,17 11:18
12:18 13:4,19
15:6,23 16:8
17:7,20 18:8
18:20 19:5,17
20:5 21:1,16
21:20,24 22:4
22:14,21 23:1
23:9,25 24:13
25:3,11 26:8
28:2 29:2 30:2
30:23 31:10,21
32:8,18 33:10
34:5,23 35:22
36:9,11
honduras
19:16 21:2
22:9
honor 3:19
4:19 5:12 9:19
11:9 16:4,12

17:25 18:10
24:4,16 30:6
31:16 32:12
34:12,18 35:2
honor's 16:12
honorable 3:5
honored 27:17
honors 3:23
13:18 27:15
28:20 30:22
31:1 36:10
humanitarian...
27:16
huszar 25:9
hyde 37:3

**i**

identification
28:24
identify 10:5
19:22 20:7
29:21
ignore 23:14
immunity 4:11
implication
34:14,24 35:1
35:7
implications
34:16 35:3,6
implicit 15:7,14
import 16:14
16:23
impose 35:15

impossibility
24:23
incarcerated
5:19,23
included 25:24
26:16,18
including 25:8
incomplete
35:23
indicate 5:22
11:4 18:23
20:2
indicated 5:21
indications
19:25
indicia 6:9
18:13,15 19:11
19:21
individual
25:25
inform 32:24
informant 5:16
information
11:12 12:3
24:12
ingersoll 13:15
30:10,20 31:8
inherently 9:4
initial 20:19
insisted 34:18
instance 9:9
16:4 20:11
instances 24:17

intelligent
32:23
intend 22:13
intent 22:7
interested
25:15
interesting
17:9 31:17
internal 11:23
international
27:14
interpreted 9:2
interview 7:10
interviews
35:24,25 36:3
introduction
3:7
investigative
5:8 7:13
involved 25:25
involving 26:3
30:21
irregular 18:6
irregularly
20:1
issuance 19:7
issue 11:8
14:14 15:10
22:6 30:11,14
31:10,11,14,14
31:23 32:9
issued 19:15
issues 15:20,20
24:3 26:11

[issues - mcginn]                                              Page 8

27:6 28:20 32:13

**j**

**j** 2:17
**joe** 3:20
**jordan** 1:9
**jose** 1:6 3:21
**joseph** 2:9
**journalism** 24:10
**juan** 1:6 3:15 3:21
**judge** 8:2 9:4 10:22 12:24 13:5 14:10,21 21:4,15 33:1 33:21 36:2
**judges** 1:25
**judgment** 29:16
**jurisdiction** 14:5,6 16:6
**jurisdictional** 14:14
**justice** 18:1 33:6

**k**

**kick** 33:7
**kicked** 11:8
**kind** 7:23 8:21 26:20
**kmw** 1:14

**knew** 11:19
**know** 3:8 9:21 10:4,5 12:10 17:23 18:24 20:9 23:9 25:3 32:2,18 34:5 35:10

**l**

**l.p.** 1:9
**lack** 12:23 14:5 16:5
**lacked** 14:4
**lacking** 35:24
**latin** 19:13 27:20
**law** 3:4 4:3 12:20 13:14 17:6 24:15,23 25:4,6,14 28:5 28:8,12,15 30:3,4,9 31:3,7 31:12 32:12 33:2,7
**ledanski** 37:3
**legal** 16:23 37:11
**legally** 22:10
**length** 18:14
**letter** 33:13,18 33:25 34:22 35:3,20 36:1,7
**level** 28:9 32:21

**liability** 4:12
**liar** 7:6
**liberty** 27:19
**life** 8:22
**light** 3:9,11,11
**limitations** 13:8,12 29:6 30:19 32:3
**limited** 7:20 27:9
**listen** 21:20
**litigation** 20:15 35:13,15
**little** 25:12
**locke** 2:5
**long** 36:6
**look** 6:12 11:12 12:1 17:4 28:16 30:4
**looked** 15:12
**looking** 11:1 17:22
**lose** 4:17 9:18
**lower** 25:13
**lp** 3:16
**luck** 1:24 15:6 15:23 16:8 20:5 21:1,15 21:16,20,24 22:4,14,21 23:1,9 25:3,11 29:2 31:10,21 32:8,18 33:2 33:10,21 34:5

34:23
**lying** 34:9

**m**

**made** 5:3 8:4 8:20 17:8 20:13 23:11 28:21
**magistrate** 21:4
**majority** 18:9
**make** 8:5 21:2 23:9 28:9,14 32:23 33:10 34:21 35:5
**makes** 14:13
**making** 8:12
**malice** 10:19 11:3,5,6,10 12:9,17 25:1
**manner** 20:2
**mark** 3:10
**marshall's** 18:1
**matching** 33:18
**material** 19:2
**matter** 9:12 14:4,5,16 16:6 20:14 31:12
**matters** 10:17 24:12
**mcginn** 2:17 13:20,22,23 15:16 16:3,11 17:14,23 18:10

**[mcginn - original]**                                               Page 9

| | | | |
|---|---|---|---|
| 19:3,6,20<br>20:10 21:4,18<br>21:23 22:1,12<br>22:17,23 23:5<br>23:16 24:4,16<br>25:7,19 26:23<br>28:11 29:8<br>30:5,24<br>**mean**  8:24 17:3<br>29:3 32:20<br>**meaningful**<br>33:23,24<br>**media's**  5:9<br>**menendez**  31:5<br>**mentioned**<br>12:25 35:25<br>**mere**  8:13<br>**merit**  20:16<br>**merits**  14:7,12<br>**metal**  20:12<br>**metric**  6:9<br>**miami**  2:15 4:6<br>**michael**  1:9<br>**michel**  28:6<br>**militate**  6:7<br>**mineola**  37:14<br>**minute**  3:10<br>**minutes**  13:20<br>30:24<br>**misapplied**<br>4:21<br>**miscarriage**<br>33:6 | **mister**  18:19<br>**motion**  11:1<br>29:6,10,11,15<br>29:16 30:12,19<br>30:21<br>**move**  3:13<br>**moved**  13:7,9<br><br>**n**<br><br>**n**  2:1 3:1 37:1<br>**name**  3:20<br>**narrow**  8:25<br>**national**  6:12<br>6:19 7:2<br>**nature**  7:24<br>31:11<br>**necessary**<br>22:10<br>**need**  9:11,15<br>17:12 24:7<br>27:10 28:14<br>35:12<br>**negligence**  25:1<br>**neutral**  4:1,9<br>4:16 5:14 6:1<br>10:10,14 24:1<br>25:24 26:6,22<br>27:25<br>**neutrally**  5:5<br>**nevertheless**<br>14:3<br>**new**  3:8 29:18<br>29:20 | **news**  4:9<br>**newspaper**<br>26:2<br>**newsworthin...**<br>4:2,8 6:10<br>**newsworthy**<br>24:11 27:23<br>**non**  20:25<br>23:22<br>**notes**  18:2<br>**notice**  12:19,23<br>13:1,9 31:3,6<br>31:12,19 32:14<br>32:19 33:11,23<br>36:1,4<br>**notices**  32:6<br>**notwithstandi...**<br>29:23<br>**novel**  3:25<br>**novo**  16:4<br>28:12<br>**numerous**<br>27:14<br>**ny**  37:14<br>**nyp**  28:6<br><br>**o**<br><br>**o**  1:21 3:1 37:1<br>**obtain**  22:10<br>**obtained**  20:22<br>**obtaining**  22:8<br>23:6<br>**officials**  20:24<br>23:21 | **oh**  25:7<br>**okay**  36:9<br>**old**  37:12<br>**oliveri**  2:9 3:16<br>3:19,20 4:18<br>5:22 6:5,20,24<br>8:2,10,19 9:2<br>9:13 10:16,22<br>11:22 12:24<br>13:5 30:24<br>31:1,16,24<br>32:11,25 33:20<br>34:11 35:2<br>36:2,10<br>**ones**  25:12<br>**open**  3:4<br>**opens**  11:23<br>**operate**  3:9<br>**operative**  16:18<br>**opinion**  18:9<br>26:12,13,18<br>27:4<br>**opportunity**<br>13:7 33:24,24<br>34:4<br>**oral**  1:16<br>**order**  9:13 14:1<br>14:2,10,21<br>23:14 25:13<br>**ordinarily**  18:3<br>**organization**<br>5:4,17 7:1<br>**original**  14:25<br>17:18 23:19 |

originally
  14:16
overlooked
  29:20
own  8:11,18
  18:14

**p**

p  2:1,1 3:1
pa  2:13
page  12:6
  17:17 33:25
panel  4:23,25
paragraph
  16:19 17:18
part  4:23 7:12
  33:8
partial  33:13
  34:9
particular
  12:21
particularly
  26:1
parties  32:12
passport  18:17
  18:18,22 19:8
  19:12
payments
  34:19
pca  25:12
person  5:17 8:1
  8:5
personality
  7:24

persons  19:15
  20:23 23:20
phase  11:25
physical  26:17
plaintiff  1:7 2:3
  3:21 29:19
  35:9,15
plaintiff's  14:8
  14:11
pleading  30:13
  31:22,25
please  3:6,20
  13:4,23 35:12
plenty  12:10
point  4:19
  16:12 17:9,24
  18:25 23:10
  24:24 25:20
  34:11,25 35:2
pointed  19:7
  34:9
points  24:6
portion  6:6
  27:4
position  36:4
pre  11:25 12:19
  12:23 13:1
  31:3,6,11,19
  32:6,14,19
  33:11 36:3
precedent  4:7
  4:10 8:25
  29:12,15,22
  30:18

precedential
  25:14
predicate  9:15
prejudice  14:2
preponderance
  15:13
present  12:13
  12:16 33:2
presented
  15:21 32:17
pretty  7:25
previously  8:5
  8:14
primary  3:24
prince  2:6
prior  27:5
  30:18
private  8:5,14
  8:14 9:7 25:25
privilege  4:1,2
  4:5,8,9,17,20
  4:21,22,24 5:9
  5:10 6:2,8,14
  7:16,19 8:18
  10:10,14 11:8
  24:2,14,20
  25:10,18 26:7
  26:22 27:8,22
problem  14:15
procedural
  30:4,8 31:14
  31:23 32:1
procedure  29:9
  29:18 30:7

proceed  3:18
  13:21
proceedings
  9:6 37:5
proclamation
  19:23
procured  19:13
procurement
  23:19
progeny  31:8
project  11:15
prominent  5:4
  5:17 6:8,20,22
  7:1,3
properly  12:22
proposition
  18:12 26:6
protection  33:4
proven  8:15 9:5
provide  24:11
provided  11:11
public  5:3 7:19
  7:20 8:1,4,6,12
  8:20,22,23,24
  9:5,14 10:18
  24:12 27:9,12
  27:23 28:4,18
publication
  5:13 6:2
publish  5:10
published  5:6,7
  7:11 9:23 11:5
  11:6,10,20

**[publishers - requirements]** Page 11

publishers 26:2
publishing 7:6
 7:9 12:4
pure 33:2,7
purpose 33:22
 35:8,14
purposes 9:6
 10:13 12:13
 35:20
put 33:22
putting 10:7

**q**

qualify 27:24
question 9:5,7
 10:13 13:3
 14:19,24 15:3
 15:3 16:14,24
 17:3 21:21
 22:19,22,24
 24:14,25 28:5
 28:8,10,12,15
 30:3,8,8 31:3
 33:1,2,7
questioned
 20:16
quickly 12:19
quotation 35:4
quote 34:21,25
 35:6
quoted 34:17
quotes 33:14
 33:15 34:9

**r**

r 1:21 2:1,9 3:1
 37:1
raging 5:10
 7:14 9:17
raise 13:9,10
 13:12 29:10,19
 30:11,14,17
 31:17
raised 14:24
 24:7 29:6
 30:15
raising 32:9
rare 13:25
reach 11:7
 12:14
reaching 14:7
read 22:4
ready 35:13,17
really 25:4
reason 7:17
 14:15
reasons 10:9
 25:22 27:2
rebuttal 3:17
 13:20 30:25
recall 22:2
receive 31:19
received 12:3
receives 27:13
reckless 11:21
recognition
 3:25 27:14

recognize
 17:13 25:10
 26:24
recognized 5:1
 10:10 24:21
 27:18 29:13
recognizes 26:6
record 37:5
red 3:11
refer 17:25
refused 12:4
regard 21:5
 35:5
regarding 15:8
 15:18,18 16:14
 21:2 23:12
 28:20 33:8
rejected 4:7
 24:19
rejection 15:14
 25:4
rejects 4:10
relying 32:22
remains 15:5
remand 27:10
remanded
 14:16
rendon 1:6
 3:22,22 7:18
 9:14 11:11
 14:17,22 15:3
 15:8 16:19
 17:15,16 19:12
 19:24 20:25

23:7 24:18,22
 27:8,9,11,13,16
 27:22 28:16,21
 29:13
rendon's 14:24
 16:17 18:14
 20:19 21:5
 22:7 23:18
 24:7 33:3
renew 18:18
repeatedly 5:15
report 5:14,21
 5:22
reportage 4:1,9
 10:10 25:24
 28:1
reported 5:5
 7:16 8:15
reporter 24:1
 24:10
reporting 4:16
 5:8 6:1 7:13
 10:14 26:7,16
 26:22 34:2,3
reports 27:23
reputable 26:1
reputation 33:5
require 35:9
requirement
 28:13 29:18,20
 33:11 35:4,16
requirements
 23:6 24:9,9
 31:6

**requires** 28:23 29:9
**requiring** 30:17
**reserved** 3:17
**respectfully** 10:22
**responded** 34:1
**response** 10:20 24:7
**responses** 33:21
**responsible** 5:3 5:17 6:25,25 7:4
**result** 20:16
**retract** 12:5 33:25 35:12
**retraction** 12:6 33:13,18 35:16 35:19
**return** 12:12
**reversing** 27:25
**review** 16:1,2,4 16:25 28:12
**reviewed** 16:9
**reviews** 16:5
**revisit** 34:2
**revocation** 18:13,16,17,19 18:21
**revoke** 16:16
**revoked** 19:12 19:21 20:3

**ricaud** 20:12
**rig** 11:13
**right** 17:17 31:18 32:1 33:3 34:10
**rights** 13:16 27:20 33:4 36:6
**riley** 1:9
**rise** 34:15 36:14
**road** 37:12
**robert** 1:24 15:6,23 16:8 20:5 21:1,16 21:20,24 22:4 22:14,21 23:1 23:9 25:3,11 29:2 31:10,21 32:8,18 33:10 34:5,23
**robertson** 1:9
**rule** 14:6 20:17
**ruled** 15:24
**rules** 29:9,17 30:7 31:13
**running** 30:19
**runs** 26:20

**s**

**s** 2:1 3:1
**sadler** 26:16
**saro** 8:6

**satisfied** 5:13 29:22
**satisfy** 8:17 29:12,14 30:18
**save** 3:4
**saying** 8:20 9:25 10:3 17:20 31:5 34:2,6
**says** 26:15 29:2 29:4
**scale** 10:8
**scientists** 7:3
**seated** 3:7
**second** 30:9
**section** 28:19 28:23
**see** 3:16 13:2 23:12
**seem** 31:14
**seemed** 26:11
**sense** 14:14 34:21 35:5
**sentence** 3:12 26:15
**separate** 33:15
**september** 37:16
**sepulveda** 5:16 5:18 7:10 9:22 9:25 10:9 11:14,17 34:18
**sepulveda's** 10:2

**serious** 5:2 7:20
**serve** 35:11
**served** 12:5
**set** 14:2
**several** 25:8
**showing** 7:25 11:12
**shows** 15:13
**side** 17:8 28:3
**signature** 37:8
**simply** 15:11 24:23
**single** 11:15
**situation** 19:1
**skeptical** 25:12
**sleeps** 13:15
**slept** 36:6
**smith** 25:8,19 26:9,10,18
**so.2d** 8:10
**society** 6:13 7:2
**solitary** 11:15
**solutions** 37:11
**someone's** 7:23
**sonya** 37:3
**sort** 35:4
**source** 6:3,9 26:1
**sources** 10:4
**southern** 1:13
**speak** 21:10,13
**specific** 17:11 17:24 19:23,23 20:8 28:24

**[specifically - timothy]**                                      Page 13

| | | | |
|---|---|---|---|
| **specifically** 17:15 19:14 25:23 27:17 28:23 | **ste** 2:14 **stewart** 2:13 **stood** 34:3 **strategically** 13:16 32:4 | **suite** 37:13 **summary** 29:15 33:14 **supplemental** 23:10 | **testimonial** 22:6 **testimony** 18:15 **thank** 3:19 13:5 |
| **specificity** 32:21 33:12 | **street** 2:6 **stripped** 14:18 15:2 20:20 21:9 | **support** 5:11 34:15 **suppose** 4:14 4:15 28:11 | 13:18,19 24:5 30:22,23 31:1 36:9,10,11,12 |
| **specifics** 32:15 **standard** 16:1 16:2,3,25 20:3 20:4,11 28:7 | **stripping** 17:16 **subject** 14:4,5 16:6,6 20:14 26:25 27:4 | **supreme** 4:5,6 4:10 8:25 13:14 19:6 20:6 31:5 | **theory** 5:8 **things** 8:22 15:25 **think** 8:2,24 |
| **standing** 34:20 **stands** 26:5 **state** 15:18 17:10 18:5,24 19:1,8,9 20:6,8 | **submit** 12:17 33:5 **subsidiary** 16:9 **substantial** 11:12 33:8 | **sure** 6:17 8:9 10:16 26:8,20 34:11 **surely** 6:18 13:24 19:17 | 9:10 10:17,23 10:24 12:10 14:13 16:12 17:19 19:1 24:5 25:19 28:13,14 30:2 |
| **stated** 25:23 27:2 **stateless** 19:15 20:23 22:9,15 22:18 23:3,8 23:20,23 | **substantive** 24:2 31:4,7,12 31:19 **sufficient** 12:1 29:25 | **surprise** 10:23 **surrendered** 21:14 **system** 3:9 | 30:5 31:18,25 32:25 33:20 **third** 29:6 **thought** 3:12 17:7 34:8 |
| **statement** 34:19 35:18 **statements** 5:6 7:6,8 28:25 34:15 | **sufficiently** 10:20,25 **suggesting** 6:18 **suggestion** 10:21 30:6 | **t** | **three** 12:6 33:25 **thrust** 9:16 **thumb** 10:7 |
| **states** 1:1,12 3:3,5 17:12 21:6 | **suit** 12:19,23 13:1 31:3,6,12 31:19 32:6,14 32:19 33:11 36:3 | **t** 37:1,1 **take** 23:25 **talked** 9:21 **talking** 31:18 **talks** 26:12 **taylor** 25:8,20 26:9,10 | **time** 3:17 5:7 7:8,12 13:13 15:22 24:1 **time's** 13:2 **timothy** 2:17 13:23 |
| **statute** 12:20 12:20 13:8,11 29:5 30:19 32:3 33:12,22 35:9,14,21 | | **teed** 15:9 **tell** 26:14 | |

**[together - z]**                                                    Page 14

| | | | |
|---|---|---|---|
| **together** 12:8 | **unable** 20:7 | **venezuela** | **war** 19:1 |
| **topic** 3:13 | **under** 4:2 7:21 | 14:19 15:5,9 | **way** 3:7 20:14 |
| **totality** 12:2,16 | 8:6,6,7 12:19 | 16:20,23 19:10 | **we've** 15:12 |
| **touch** 28:19 | 13:14 14:6 | 19:19,21 22:19 | 28:2,4 |
| **toward** 32:1 | 17:6 18:5,22 | **venezuelan** | **web** 11:15 |
| **towards** 7:25 | 24:14,23 25:5 | 14:22 15:1 | **weighs** 22:24 |
| **traffic** 3:9 | 28:7 30:3 31:3 | 16:16 17:6 | **weight** 18:5 |
| **transcript** 37:4 | 31:8,13 32:20 | 20:1 | **welcome** 3:7 |
| **transform** 8:16 | 36:12 | **verbatim** 34:21 | **williams** 14:10 |
| 9:13 | **undergirding** | 35:4 | 14:21 |
| **travel** 19:14 | 5:9 | **veritext** 37:11 | **win** 16:1 |
| 20:22 21:5 | **underhill** 19:3 | **versus** 3:15 | **words** 15:9 |
| 22:8,11 | 19:5 | 25:19 | 17:21 32:19 |
| **trees** 9:19 | **underlying** | **viewed** 12:15 | **work** 7:23 8:18 |
| **trend** 31:25 | 15:17 23:5 | **voluntarily** | 11:14,16 27:20 |
| **trial** 25:23 27:2 | **understanding** | 9:16 | **works** 25:14 |
| **true** 10:1 11:2 | 25:14 | **vondrak** 32:5 | |
| 37:4 | **undisputed** | | **x** |
| **trumpeting** | 17:2 | **w** | **x** 9:25 |
| 26:21 | **unique** 18:25 | **wait** 32:4 | **y** |
| **truth** 11:21 | **united** 1:1,12 | **waited** 29:5 | **y** 9:25 |
| **turn** 12:18 33:5 | 3:3,5 17:12 | 36:6 | **ye** 3:2,2,2 |
| **two** 3:10,24 | 21:6 | **waits** 13:16 | **yeah** 17:23 |
| 26:2 33:20 | **unqualified** | **waive** 32:12 | 29:8 |
| **typically** 29:14 | 9:24 | **waived** 13:1 | **year** 13:10 |
| **u** | **untenable** 4:12 | 29:3,4 31:13 | **years** 27:18 |
| **u.s.** 4:6,10 19:6 | **v** | 33:7 | **yellow** 3:11 |
| 20:24 23:21 | **v** 1:8 4:6 8:7 | **waiver** 32:15 | **yoakley** 2:13 |
| 27:18 | 20:12 25:8 | 33:1 36:5 | **z** |
| **ultimately** | 26:9,10 28:6 | **waives** 13:17 | **z** 9:25 |
| 14:19 | **va** 2:7 | **wall** 12:9 | |
| **umbrella** 32:20 | **various** 9:3 | **want** 9:18 | |
| | | 23:25 27:7 | |